United States District Court
Southern District of Texas
FILED

JUL 1 9 2002

Michael N Milby Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DANIEL REYNA AND | § | |
| ROSE G. REYNA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. M-02-329 |
| | § | |
| | § | |
| STATE FARM LLOYDS | § | |

---

## STATE FARM LLOYDS' MOTION TO SET ASIDE
## PARTIAL DEFAULT JUDGMENT

---

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Pursuant to Federal Rules of Civil Procedure 55(c) and 60(b),[1] Defendant State Farm

Lloyds ("State Farm") files this Motion To Set Aside Partial Default Judgment signed on July

15, 2002, at 11:30 a.m., by the Honorable Rudy Gonzalez, Judge, Hidalgo County Court at Law

Number 1, Hidalgo County, Texas. In support of this Motion, State Farm respectfully shows:

### PRELIMINARY STATEMENT

Good cause exists to set aside Plaintiffs' partial default judgment against State Farm.

State Farm, like any litigant seeking to achieve justice and the protection of due process rights,

should not suffer what is certainly an unduly harsh, unfair outcome - a liability default judgment

- when the circumstances leading to default were not in any way intentional, but so plainly the

result of mistake, excusable neglect, and/or accident.

State Farm has a meritorious and legitimate defense to Plaintiffs' claims, including

that it acted reasonably in the handling and the processing of the underlying claims.

---

[1] Upon removal, federal rather than state procedure governs the case. *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 895 (5th Cir. 1984).

1

Moreover, Plaintiffs are not likely to suffer prejudice in any way sufficient to justify upholding the state court's partial default judgment. State Farm is prepared and ready to go forward with the trial on the merits of the case should the Court set aside the Default Judgment.

## PROCEDURAL BACKGROUND

1.      On or about May 24, 2002, Plaintiffs filed their Original Petition styled *Daniel Reyna and Rose G. Reyna*, in the County Court at Law Number Two, Hidalgo County, Texas, Cause No. CL-39,332-B.

2.      On June 18, 2002, Plaintiffs served Defendant State Farm with the summons by hand delivery. Accordingly, State Farm's answer date was Monday, July 15, 2002, at 10:00 a.m.[2]

3.      On Thursday, July 11, 2002, State Farm's counsel, Monica J. Rodriguez, of Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump"), caused State Farm's Verified Original Answer and Notice of Removal to be deposited with Federal Express for overnight delivery to State Farm's local counsel, Victor Vicinaiz, of Roerig, Oliveira & Fisher, L.L.P. ("Roerig Oliveira"). Between June 18, 2002 and July 11, State Farm and its counsel worked to review the information necessary to determine a course of action to defend this matter. See Affidavit of Monica J. Rodriguez, attached as Exhibit "A" and incorporated by reference for all purposes.

4.      On Friday, July 12, 2002, Ms. Rodriguez served a copy of State Farm's Original Verified Answer on Plaintiffs' counsel by certified mail. See Exh. A (Rodriguez Affidavit).[3]

---

[2] See Tex. R. Civ. P. 99.

[3] The return receipt ("green card") shows Mr. Ortiz' firm received the answer on July 15, 2002. See Exh. A (Rodriguez Affidavit). Inasmuch as usual deliver routinely takes place in the morning, there exists a reasonable possibility that Plaintiffs' counsel knew or should have know of State Farm's answer before that counsel pursued the partial default.

2

5.     Despite clear instructions, Federal Express did not deliver the Original Verified Answer to State Farm's local counsel until Monday, July 15, 2002 at 10:51 a.m.  See Exh. A (Rodriguez Affidavit); Affidavit of Victor Vicinaiz, attached as Exhibit "B" and incorporated by reference for all purposes.

6.     At 11:33 a.m. on Monday, July 15, 2002, Judge Rudy Gonzalez, at the instance of Plaintiffs' counsel, signed a default judgment against State Farm as to liability only.  A true and correct copy of the Default Judgment is attached to this Motion as Exhibit "C" and incorporated by reference for all purposes.

7.     The Roerig Oliveira firm caused State Farm's Original Verified Answer to be filed with the Hidalgo County Clerk at 2:08 p.m., promptly after receiving the Federal Express delivery.  See Exh. C. (Vicinaiz Affidavit).

8.     It appears Plaintiffs' counsel was aware of the identity of State Farm's counsel when he obtained the partial default judgment.  The Roerig Oliveira firm represented State Farm in a pre-suit mediation among these parties on April 20, 2002.[4]  See Exh. C. (Vicinaiz Affidavit).

9.     28 U.S. C. § 1446 afforded State Farm the right to remove this action to federal court through July 18, 2002.  Indeed, State Farm timely removed this case on July 15, 2002, as it has done in each of the several dozen "mold" suits filed in South Texas.

10.     State Farm promptly filed this Motion to set aside Plaintiffs' partial default judgment.

---

[4] See Rule 11 of the Texas Lawyer's Creed, which states: "I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed."

3

## ARGUMENT

**A.    Applicable Federal Standard warrants setting aside the state court partial default judgment**

11.     A federal court has the authority to set aside a default judgment obtained in state court prior to removal if the default judgment was based on mistake, inadvertence, surprise, or excusable neglect. FED. R. CIV. PRO. 60(b)(1); *see Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 895 (5th Cir. 1984).[5] The Fifth Circuit has established a clear, unequivocal preference against default and in favor of a "most liberal" application of Rule 60(b). *See Azzopardi*, 742 F.2d at 895 (noting that defendant's insurers failure to retain counsel timely was a mistake, which was immediately rectified by filing the notice of removal and answer within 9 days of the default). Moreover, "a court should resolve all doubts in favor of the party seeking relief from the default judgment." *Goldstein v. Gordon*, 3:00-CV-0022-P, 2002 U.S. Dist. LEXIS 3348 *5 (N.D. Tex. February 27, 2002).[6]

12.     The facts establish State Farm's plain intention to defend the claims the Plaintiffs assert. For example, on April 20, 2002, State Farm attended pre-suit mediation and was represented by the Roerig Oliveira firm. In addition, State Farm filed an answer to Plaintiffs' lawsuit, albeit late under State rules, yet only a few hours after the State court time frame. Default judgments are appropriate only when "the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted).

---

[5] The purpose of Rule 60(b) is to "strike a delicate balance between . . . the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Seven Elves, Inc. v. Eskenazi, et. al.*, 635 F.2d 396, 401 (5th Cir. 1981) (emphasizing that although finality is an important goal, a judgment should reflect the true merits of the cause) (emphasis added); *Owen-Illinois, Inc.* v. T&N LTD., et. al., 191 F.R.D. 522, 525 (E.D. Tex. 2000) (noting Fifth Circuit policy in favor of resolving cases on their merits and against use of default judgments).

[6] Copies of cases reported on Lexis are provided for the convenience of the court at Exhibit "G."

4

**B.**     **The Facts and Circumstances of the Matter Conclusively Satisfy the Factors Applicable to the Court's Determination of this Motion.**

13.     State Farm has proffered incontrovertible proof that it filed its Answer late (by a matter of just a few hours) only due to excusable neglect, mistake, or accident, not intentionally. Courts consider 1) extent of prejudice to plaintiff; 2) merits of defendant's asserted defense; and 3) culpability of defendant's conduct in deciding whether to set aside a default judgment. *See Hibernia Nat'l Bank v. Administraction Central Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir. 1985).[7]  Under the facts before this Court, these factors weigh heavily in favor of setting aside Plaintiffs' partial default judgment.

*1.     Granting this Motion will not prejudice the Plaintiffs.*

14.     Setting aside the Plaintiffs' Partial Default Judgment will not prejudice the Plaintiffs.  The "mere possibility of prejudice from delay, which is inherent in every case, is insufficient to require denial of a 60(b)(1) motion." *Hibernia*, 776 F.2d at 1280.  In addition, the delay in the collection of a judgment by a Plaintiff or requiring a Plaintiff to litigate the merits of the claim is insufficient prejudice to allow a default judgment to stand. *See Goldstein*, 2002 U.S. Dist. LEXIS 3348 at *16.

15.     In this case, Plaintiffs will not suffer any prejudice to justify sustaining the default judgment rendered in state court.  Plaintiffs had a reasonable basis to believe State Farm was represented by counsel, but nevertheless proceeded to obtain the partial default judgment.  Nor will the granting of this Motion slow the progress of this case, or hinder Plaintiffs' rights to prosecute their claims.  As such, the granting of this Motion will occasion no additional delay and will not work an injury to Plaintiffs justifying a default judgment.  The suit is so new, Plaintiffs can hardly claim they will suffer any prejudice if this Court grants this Motion.

064253.0090 SAN ANTONIO 272324 v5

16.     Moreover, the unfair prejudice State Farm will suffer appears patent from a brief review of the Plaintiffs' petition and the partial default judgment. Plaintiffs' state court petition sets forth only the most basic facts relating to their claims. The Plaintiffs' state court pleading offers no factual underpinning about which of the eight insurance claims they complain. For example, State Farm adjusted a foundation claim simultaneously to the mold claims made by the Reynas. State Farm hire Tejas Forensic Engineering, Inc., to investigate the engineering aspects of the foundation claim. Based upon that objective engineering investigation, State Farm denied coverage for the foundation claim. On the other hand, State Farm paid the Plaintiffs over $33, 000 for mold remediation, based upon the estimate of a professional remediation company prepared to perform the work for that cost.

17.     Plaintiffs' petition is so broad and ambiguous that it fails to provide fair notice of their complaints. The pleading does not fairly identify whether, for example, the Plaintiffs believe it erred in its denial of the foundation claim. Plaintiffs offered no evidence at any time to controvert the engineering analysis undertaken by Tejas Forensic Engineering, Inc.[8] That the Plaintiffs should recover for claims which are disputed and for which the Plaintiffs offer no proof is contrary to every notion of justice upon which the system of law is based.

18.     Plaintiffs seek to avoid any responsibility under the law to prove the merits of their claims by relying on a broadly worded partial default judgment on liability. State Farm's claim file, however, established a meritorious defense-that leaks caused no foundation damage. Under Plaintiffs' approach, State Farm would have no opportunity to defend its claim decisions.

---

[7] These factors are not "talismanic" and a district court may consider other factors. *Goldstein*, 2002 U.S. Dist. LEXIS 3348 at *7.
[8] A true and correct copy of Tejas Forensic Engineering, Inc.'s report is attached as Exhibit "D," and incorporated by reference for all purposes.

### 2.     *Defendants have a Meritorious Defense*

19.     As evidenced by State Farm's Verified Original Answer filed in state court,[9] State

Farm advances several meritorious defenses to Plaintiffs' claims for breach of contract, breach of

the duty of good faith and fair dealing, breach of Articles 21.21 and 21.55 of the Texas Insurance

Code and breach of the Texas Deceptive Trade Practices-Consumer Protection-Act.     The

meritorious defense requirement does not require the moving party to show it is <u>likely</u> to prevail.

*See Owen-Illinois, Inc.* v. *T&N LTD., et. al.*, 191 F.R.D. 522, 526 (E.D. Tex. 2000) (emphasis

added).  Rather, because there is a <u>possibility</u> that State Farm can prevail on the merits, it must

be allowed to defend itself on the merits.  *See Claire v. Ensurelink*, 3:01-CV-1548-G, 2001 U.S.

Dist. LEXIS 20108, *9 (N.D. Tex. December 4, 2001) (emphasis added).

20.     This dispute centers primarily on the scope of remediation.  As long as there

exists a reasonable basis for an insurer's claim decision, even if that decision is wrong, the

insurer will not face extra-contractual liability under the duty of good faith and fair dealing, the

DTPA, or the Insurance Code.  *See Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.

1988) *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 600 (Tex. 1993); *Saunders v.

Commonwealth County Mut. Ins. Co.*, 928 S.W.2d 322, 324 (Tex. App.—San Antonio 1996, no

writ); *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994,

writ denied).  State Farm promptly investigated the Plaintiffs' mold claims, paid over $33,000

for mold remediation and over $25,000 in additional living expenses, conducted an objective

investigation, hired competent professionals (Southern Ecology Management, Inc., and Service

Master Quality Restoration Services) to provide a scope of repair and remediation estimate, and

offered to effectuate a reasonable and prompt claim settlement.  Accordingly, State Farm

complied with its obligations under Texas common law, consumer law, and the Texas Insurance Code. See Affidavit of Rick H. Rosenblum, attached as Exhibit "E" and incorporated by reference for all purposes.

### 3.  State Farm's counsel's failure to timely file an answer was due to mistake excusable neglect and/or accidence and not willful

21.   State Farm did not actively evade service, intentionally ignore court orders or willfully violate court rules. State Farm's counsel has procedures in place to assure that all suits against State Farm are timely answered and defended. Upon receipt of the Plaintiffs' Original Petition from State Farm, the answer date is immediately calendared. State Farm's claim files regarding the Plaintiffs' insurance claims are analyzed to help determine the appropriate case strategy. The Original Answer and Removal documents are drafted and, where appropriate, the verification is secured.[10] The Original Answer and Removal documents are sent, by overnight mail, to local counsel no later than the Thursday before the answer date.[11] In this case, State Farm's counsel sent the Original Verified Answer on July 11, 2002 by Federal Express Priority Overnight, for filing by local counsel on Friday, July 12, 2002. As seen on the Federal Express routing log attached to Exhibit A, the package containing State Farm's Original Answer arrived in Pharr, Texas by July 13, 2002 at 9:08 a.m., a day after State Farm's counsel had instructed. To compound the problem, Federal Express held the package at its Pharr Location until Monday Morning, July 15, 2002, at 10:51 a.m., when it was finally delivered. State Farm promptly filed its Original Verified Answer at 2:08 p.m. See Exh. F (State Farm's Answer).

---

[9] A true and correct file-stamped copy of State Farm's Original Verified Answer is attached as Exhibit "F," and incorporated by reference for all purposes.

[10] In this case, the verification was signed on July 9, 2002. Verifications are required when filing an Answer in Texas State court, under certain circumstances. See Tex. R. Civ. P. 93.

22.     Thus, even though State Farm's counsel had established procedures in place, human error resulted in an untimely delivery (by a third party) and filing of the Answer. *See McGarrah v. Kmart Corp.*, No. 3:97-CV-2386-G, 1998 U.S. Dist. LEXIS 17118, *5 (N.D. Tex. October 22, 1998); *Owen-Illinois*, 191 F.R.D. at 528 (noting that "no system can provide for every possible contingency, nor does the law require [defendant] to have a full-proof system."). State Farm did not deliberately ignore the answer timeframe, but rather inadvertently missed it by a couple of hours as a result of mistake, excusable neglect and/or accident. Thus, good cause exists to set aside the default. *See Hibernia Nat'l Bank v. Administraction Central Sociedad Anonima*, 776 F.2d 1277, 1280-81 (5th Cir. 1985) ("The minimal tardiness involved in this case was not enough to justify depriving [defendant] of the right to present a substantive defense"). Further, State Farm has moved expeditiously to rectify its default and prevent any further delay by this action.[12]

## CONCLUSION

23.     State Farm respectfully submits that the law, the facts, and the interests of justice allow one result-the setting aide of the partial default judgment signed in the county court. State Farm and its counsel acted reasonably to comply with state procedure.  But for an unusual and unforeseen error in the mail system, State Farm would have timely answered as it has in several dozen mold suits filed in South Texas against State Farm.  The rules of Federal Procedure and the Fifth Circuit strongly disfavor default judgments.  Finally, State Farm submits the ends of

---

[11] State Farm has found it is more efficient to have local counsel hand deliver the Answer to the court, as opposed to mailing it, and immediately obtain a complete copy of the state court file and docket sheet to attach to State Farm's Notice of Removal, pursuant to 28 U.S.C. §1446(a).

[12] *Claire*, 2001 U.S. Dist. LEXIS 20108 at *4 (noting timeliness of Motion to Set Aside Default should be considered); *Owen-Illinois, Inc.*, 191 F.R.D. at 529.

justice can in no way be served by enforcing a default under the circumstances, especially since Plaintiffs' can invoke no reasonable claim to having suffered prejudice.

WHEREFORE, Defendant State Farm hereby requests that this Court set aside the Default Judgment entered against it by the Hidalgo County Court at Law Number Two on July 15, 2002, and allow the matter to proceed under the rules and schedule set by the Honorable Court.

## CONFERENCE

The undersigned represents that several attempts to confer with Plaintiffs' counsel occurred between July 16, 2002 and July 18, 2002.  Plaintiffs' counsel did not return our calls.

Respectfully submitted,

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas  78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035

RICK H. ROSENBLUM
Attorney-in-Charge
State Bar No. 17276100
Southern District Bar No. 13015
DAVID R. STEPHENS
State Bar No. 19146100
Southern District Bar No. 21360
MONICA J. RODRIGUEZ
State Bar No. 24027792
Southern District Bar No. 28514

—and—

VICTOR VICINAIZ
State Bar No. 20562300
S.D. Tex. Bar No. 10956
ROERIG, OLIVEIRA & FISHER, L.L.P.
506 East Dove Avenue
McAllen, Texas 78504-2241
Telephone: (956) 631-8049
Telecopier: (956) 631-8141

ATTORNEYS FOR DEFENDANT
STATE FARM LLOYDS

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent via *certified mail, return receipt requested* to the following:

Reynaldo Ortiz
Gina Karam Millin
Law Office of Reynaldo Ortiz, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas  78504

on this \_\_\_\_\_ day of July, 2002.

RICK H. ROSENBLUM

11

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **DANIEL REYNA AND** | § | |
| **ROSE G. REYNA** | § | |
| | § | |
| **VS.** | § | . **CIVIL ACTION NO. M-02-329** |
| | § | |
| | § | |
| **STATE FARM LLOYDS** | § | |

---

**ORDER ON STATE FARM LLOYDS' MOTION TO SET ASIDE**
**PARTIAL DEFAULT JUDGMENT**

---

On this ___ day of _____, 2002 came to be considered State Farm Lloyds' Motion to Set Aside Partial Default Judgment.  Upon review of this Motion, and any responses thereto, the Court is of the opinion that the Motion should be **GRANTED**.

It is therefore, **ORDERED** that State Farm Lloyds' Motion to Set Aside Default Judgment is hereby **GRANTED**.

It is further **ORDERED** that the Default Judgment entered by Hidalgo County Court at Law Number 2 on July 15, 2002, is set aside.

**SIGNED** on this ____ day of _____, 2002.

_____
HON. RICARDO HINOJOSA
UNITED STATED DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| DANIEL REYNA AND | § | |
| ROSE G. REYNA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. M-02-329 |
| | § | |
| | § | |
| STATE FARM LLOYDS | § | |

---

### AFFIDAVIT OF MONICA J. RODRIGUEZ

---

| | |
|---|---|
| IN THE STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

I, Monica J. Rodriguez, being duly sworn, deposes and says:

1.      I am over eighteen (18) years of age, and I am otherwise competent to make this Affidavit. I have personal knowledge of the facts stated in this Affidavit, and they are true and correct.

2.      I am at attorney with the law firm, Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump"). I am one of the attorneys representing State Farm Lloyds ("State Farm") in the defense of this lawsuit. I practice law in San Antonio, Texas. I have practiced law in San Antonio, Texas for almost 2 years. I have been licensed and a member in good standing of the State Bar of Texas since November 2000. I have never been subject to any disciplinary proceeding.

3.      Between June 18, 2002 and July 11, State Farm and its counsel worked to review the information necessary to determine a course of action to defend this matter.

4.      On July 11, 2002, I prepared and directed my secretary, Ginger Landry, to deposit the Original Verified Answer, with Federal Express for Priority Overnight delivery to our local counsel's office in McAllen, Texas. The package was to arrive in McAllen on July 12, 2002. A true and correct copy of the Federal Express Air Bill is attached as Exhibit "1."

5.      Local counsel was directed to file the Answer on Friday, July 12, 2002 and file the Notice of Removal, after filing the Answer, on either Friday, July 12, 2002 or Monday, July 15, 2002. A true and correct copy of the letter, dated July 11, 2002, from Monica J. Rodriguez to Victor Vicinaiz is attached as Exhibit "2."



EXHIBIT
A

6.     I served the Original Verified Answer on Mr. Reynaldo Ortiz from my office on July 12, 2002 by certified mail, return receipt requested.  The return receipt indicates the Answer was delivered on July 15, 2002.  A true and correct copy of the transmittal letter from Monica J. Rodriguez to Mr. Reynaldo Ortiz and return receipt is attached as Exhibit "3."

7.     Federal Express did not deliver the package containing the Original Verified Answer until Monday, July 15, 2002, at 10:51 a.m.  A true and correct copy of the Federal Express Tracking Log is attached as Exhibit "4."  I did not learn that Federal Express failed to deliver the material until approximately 2:00 p.m., when I received a call from local counsel, Victor Vicinaiz.

8.     Our failure to recognize that the Federal Express package was not delivered on Friday, July 12, 2002, was due to our accident, or mistake, and was in no way intentional.

Further Affiant Sayeth Not.


DATED:     July _18_, 2002

_____
MONICA J. RODRIGUEZ

Subscribed to and sworn to before me, this _18th_ day of July, 2002.

I. GENELLE MILES
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 12-23-2005

_____
Notary Public

My commission expires: _12/23/05_

**FedEx** *USA Airbill*
Express

FedEx Tracking Number **8296 8227 6166**

**Sender's Copy**

**1 From** *Please print and press hard.*

Date **7/11/02**

Sender's FedEx Account Number **1051-7984-7**

Sender's Name **Monica J. Rodriguez** Phone **(210) 281-7000**

Company **AKIN GUMP STRAUS HAUER & FELD**

Address **300 CONVENT ST STE 1500**

City **SAN ANTONIO** State **TX** ZIP **78205**

**2 Your Internal Billing Reference** *First 24 characters will appear on invoice.* **064253.0000** OPTIONAL **(State Farm)**

**3 To**

Recipient's Name **Mr. Victor Vicinaiz** Phone ( )

Company **Roerig, Oliveira & Fisher, LLP**

Address **506 East Dove Ave.**

*To "HOLD" at FedEx location, print FedEx address.*      *We cannot deliver to P.O. boxes or P.O ZIP codes.*

City **McAllen** State **TX** ZIP **78504-2241**

**Peel and Stick FedEx USA Airbill**

**See back for application instructions.**

**Questions? Visit our Web site at fedex.com**
or call 1·800·Go·FedEx® (800)463-3339.
By using this Airbill you agree to the service conditions on the back of this Airbill and in our current Service Guide, including terms that limit our liability.

**0192323622**

**4a Express Package Service**    *Packages up to 150 lbs.*

[X] FedEx Priority Overnight    [ ] FedEx Standard Overnight    [ ] FedEx First Overnight

[ ] FedEx 2Day    [ ] FedEx Express Saver    [ ] NEW FedEx Extra Hours

**4b Express Freight Service**    *Packages over 150 lbs.*

[ ] FedEx 1Day Freight*    [ ] FedEx 2Day Freight    [ ] FedEx 3Day Freight

**5 Packaging**

[ ] FedEx Envelope*    [ ] FedEx Pak*    [ ] Other Pkg.

**6 Special Handling**

[ ] SATURDAY Delivery    [ ] SUNDAY Delivery    [ ] HOLD Weekday    [ ] HOLD Saturday

Does this shipment contain dangerous goods?

[ ] No    [ ] Yes As per attached Shipper's Declaration    [ ] Dry Ice    [ ] Cargo Aircraft Only

**7 Payment** *Bill to:*

[X] Sender    [ ] Recipient    [ ] Third Party    [ ] Credit Card    [ ] Cash/Check

Total Packages    Total Weight    Total Declared Value

**8 Release Signature** *Sign to authorize delivery without obtaining signature.*

**406**

**EXHIBIT**

# AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.

ATTORNEYS AT LAW
300 CONVENT STREET
SUITE 1500
SAN ANTONIO, TEXAS 78205
(210) 281-7000
FAX (210) 224-2035
www.akingump.com

AUSTIN
BRUSSELS
DALLAS
DENVER
HOUSTON
LONDON
LOS ANGELES
MOSCOW
NEW YORK
NORTHERN VIRGINIA
PHILADELPHIA
SAN ANTONIO
WASHINGTON, D.C.

DIRECT DIAL NUMBER (210) 281-7185
E-MAIL ADDRESS MORODRIGUEZ@AKINGUMP.com

RIYADH (AFFILIATE)

July 11, 2002

### *VIA FEDERAL EXPRESS*

Mr. Victor Vicinaiz
Roerig, Oliveira & Fisher, L.L.P.
506 East Dove Avenue
McAllen, Texas 78504-2241

   Re: *Daniel and Rose Reyna v. State Farm Lloyds*; Cause No. 39,332-B, In the County
     Court at Law No. 2, Hidalgo County.

Dear Mr. Vicinaiz:

  Thank you for your assistance in this case.  We look forward to working with you.  I
enclose the following documents for the above-referenced case:

   1. Defendant State Farm Lloyds' Verified Original Answer;
   2. Check in the amount of $150.00 for filing fee;
   3. Index of Matters Being Filed;
   4. Civil Cover Sheet;
   5. Supplemental Civil Cover Sheet;
   6. State Farm Lloyds' Notice of Removal (Federal);
   7. List of All Counsel of Record; and
   8. State Farm Lloyds' Notice of Removal (State).

  Please have your staff file the Answer in the county court on Friday, July 12, 2002.
When the Answer is filed, ask the clerk to add it to the docket sheet, and obtain a complete
docket and copy of the court's entire file for each case.  We will serve the State Court Answer on
Plaintiff's counsel from here, so you will not need to serve them.

  For the Removal, you will need to insert the copy of the docket sheet and state court
pleadings where we have indicated as Exhibit A.  Please file and serve the Notice of Removal
and related documents in federal court on Friday, July 12, or Monday, July 15, and serve
Plaintiffs' counsel by certified mail.



EXHIBIT
2

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.

Mr. Victor Vicinaiz
July 11, 2002
Page 2

After you have filed the Removal with the federal court, please file the Notice of Removal in the county court directing them to take no further action in the case. For each of these filings, please present an extra copy to the Court so that we will have a file-stamped copy from the Court for each pleading. Once all of the filings are completed, please send a file-marked copy of each pleading to my attention so I can copy and send them to the client.

If you have any questions or concerns, please do not hesitate to contact me. My assistant, Ginger Landry, can also help with any questions and will know how to reach me. Her direct dial number is (210) 281-7093.

Sincerely,

Monica J. Rodriguez

MJR/gsl
Enclosures

064253.0090 SAN ANTONIO 271602 v1

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.

ATTORNEYS AT LAW
300 CONVENT STREET
SUITE 1500
SAN ANTONIO, TEXAS 78205
(210) 281-7000
FAX (210) 224-2035
www.akingump.com

AUSTIN
BRUSSELS
CHICAGO
DALLAS
DENVER
HOUSTON
LONDON
LOS ANGELES
MOSCOW
NEW YORK
NORTHERN VIRGINIA
PHILADELPHIA
SAN ANTONIO
WASHINGTON, D.C.

RIYADH (AFFILIATE)

DIRECT DIAL NUMBER (210) 281-7185
E-MAIL ADDRESS morodriguez@akingump.com



July 12, 2002

**Certified Article Number**

7160 3901 9844 8679 3582

**SENDERS RECORD**

*VIA CERTIFIED MAIL, RRR*
*NO. 7160 3901 9844 8679 3582*

Mr. Reynaldo Ortiz
Law Office of Reynaldo Ortiz, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas  78504

Re:     *Daniel Reyna and Rose G. Reyna v. State Farm Lloyds*; Cause No. CL-39,332-B;
        In the County Court at Law No. 2, Hidalgo County, Texas

Dear Mr. Ortiz:

    Enclosed is Defendant State Farm Lloyds' Verified Original Answer to Plaintiffs' Original
Petition, filed on July 12, 2002.

    Please call me if you have any questions.

Sincerely,

Monica J. Rodriguez

MJR/mdc
Enclosures

**EXHIBIT**
**3**

064253.0000 271921 v1



COMPLETE THIS SECTION ON DELIVERY

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature

☐ Agent
☐ Addressee

D. Is delivery address different from item 1?
If YES, enter delivery address below:   ☐ No

7160 3901 9844 8679 3582

3. Service Type   CERTIFIED MAIL

4. Restricted Delivery? (Extra Fee)   ☐ Yes

1. Article Addressed to:

Mr. Reynaldo Ortiz
Ms. Gina Karam Millin
Law Offices of Reynaldo Ortiz, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas 78504

064253.0000                           Monica J. Rodriguez

PS Form 3811, July 2001          Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● PRINT YOUR NAME, ADDRESS AND ZIP CODE BELOW ●

AKIN GUMP STRAUSS HAUER & FELD
300 CONVENT ST  STE 1500
SAN ANTONIO  TX  78205-3732



United States



Ship | Track | Rates | Signature Proof | Locations | Pickup | International Tools

Home | About FedEx | Service Info | Careers | eBusiness Tools | Manage My Account | Customer Service | Site Index

Select More Online Services [ ] Go          Search for [ ] Go



▸ Track Shipments
▸ Alternate Reference Track
▸ Email Track
▸ FedEx InSight
▸ Custom Critical
▸ Cargo Track
▸ FedEx Freight

**Related Links**
▸ Signature Proof
▸ My FedEx
▸ FedEx Wireless Solutions
▸ Handheld Track
▸ FedEx Sidebar
▸ Print, Bind & Ship
▸ FedEx Address Checker

## Track Shipments
## Detailed Results

Quick Help

| | |
|---|---|
| Tracking Number | 829682276166 |
| Reference Number | 064253 0000 STATE FORM |
| Ship Date | 07/11/2002 |
| Delivered To | Recept/Frnt desk |
| Delivery Location | MCALLEN TX |
| Delivery Date/Time | 07/15/2002 10:51 |
| Signed For By | S.ELIZONDO |
| Service Type | Priority Letter |

**Tracking Options**
- Obtain a Signature Proof of Delivery
- Email these tracking results to one or more recipients
- Track More Shipments

| Scan Activity | Date/Time | Comments |
|---|---|---|
| DeliveredPHARR TX | 07/15/2002 10:51 | |
| On FedEx vehicle for deliveryPHARR TX | 07/15/2002 07:57 | |
| Package statusPHARR TX | 07/13/2002 09:55 | Package in FedEx location |
| Arrived at FedEx Destination LocationPHARR TX | 07/13/2002 09:08 | |
| Left FedEx Sort FacilityMEMPHIS TN | 07/12/2002 13:03 | |
| Left FedEx RampSAN ANTONIO TX | 07/11/2002 22:20 | |
| Arrived at FedEx RampSAN ANTONIO TX | 07/11/2002 22:19 | |
| Left FedEx Origin LocationSAN ANTONIO TX | 07/11/2002 21:21 | |
| Picked up by FedExSAN ANTONIO TX | 07/11/2002 19:41 | |





## Email Your Detailed Tracking Results
Enter your email (optional), up to three email addresses as recipients, add your message, and click on **Send Email.**

| From | [ ] |
|---|---|
| To | [ ] |
| To | [ ] |
| To | [ ] |

Add a message to this email.



EXHIBIT
4

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| DANIEL REYNA AND | § | |
| ROSE G. REYNA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. M-02-329 |
| | § | |
| | § | |
| STATE FARM LLOYDS | § | |

---

### AFFIDAVIT OF VICTOR VICINAIZ

---

| | |
|---|---|
| IN THE STATE OF TEXAS | § |
| | § |
| COUNTY OF EL PASO | § |

I, Victor Vicinaiz, declare as follows:

1.      I am over eighteen (18) years of age, and I am otherwise competent to make this Affidavit. I have personal knowledge of the facts stated in this Affidavit, and they are true and correct.

2.      I am an attorney with the Rio Grande Valley-based law firm, Roerig, Oliveira & Fisher, L.L.P., ("Roerig Oliveira") and was retained by State Farm Lloyds ("State Farm") as local counsel. I practice law in McAllen, Texas. I have practiced law in McAllen, Texas for 14 years. I have been licensed and a member in good standing of the State Bar of Texas since 1987. I have never been subject to any disciplinary proceeding.

3.      Our firm represents State Farm as local counsel in approximately 28 mold lawsuits. I work with the counsel from Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump") on many of these cases.

4.      On April 20, 2002, our firm represented State Farm at a pre-suit mediation. Reynaldo Ortiz also attended the mediation on behalf of Plaintiffs in this case. Prior to seeking the partial default, neither Mr. Ortiz nor anyone from his office contacted our office about State Farm's intent to defend the matter.

5.      Roerig, Oliveira & Fisher, L.L.P and Akin Gump have instituted standard procedures for filing the Answer and, where appropriate, Notices of Removal for cases in which we represent State Farm.


EXHIBIT
B

6.   Akin Gump prepares the Original Answer and, if applicable, the Notice of Removal documents.

7.   No later than the Thursday before the state court answer date, Akin Gump sends the Original Verified Answer and Notice of Removal by overnight mail to me.

8.   I cause the Original Answer to be filed the Friday before the Monday answer date. I also direct our staff to obtain and a copy of the entire state court file to attach to the removal notice, pursuant to 28 U.S.C. §1446(a). By accomplishing the filing fo the Answer and copying of the clerk's case file at one time, we can be more efficient in avoiding extra trips to the clerk's office.

9.   The reason we file the Original Answer by hand delivery on the Friday before the Answer Date is to obtain copy of the state court file that will include the file stamped Answer.

10.  The Notice of Removal is filed in the Federal Court and notice is sent to Plaintiffs and filed with the State Court pursuant to 28 U.S.C. §1446(d).

11.  These procedures were followed in this case, except that the Federal Express package containing the Original Answer and Removal documents for this case was not delivered until Monday, July 15, 2002, at or after 10:51 a.m. I did not receive this package until 11:45 a.m.

12.  I caused the Original Answer to be filed promptly upon receipt of the package.

13.  Our failure to recognize that we did not receive the package on Friday, July 12, 2002, was due to our accident or mistake, and was in no way intentional.

Further Affiant Sayeth Not.


DATED:     July 18, 2002

_____
VICTOR VICINAIZ


Subscribed to and sworn to before me, it is 18th day of July, 2002

_____
Notary Public

My commission expires: 3 - 12 - 2005

CAUSE NO. CL-39,332-B

| | | |
|---|---|---|
| **DANIEL REYNA AND** | § | IN THE COUNTY COURT |
| **ROSE G. REYNA** | § | |
| | § | |
| **VS.** | § | AT LAW NO. 2 |
| | § | |
| **STATE FARM LLOYD'S** | § | HIDALGO COUNTY, TEXAS |

JUL 16 2002

JUAN D. SALINAS III, CLERK OF HIDALGO CO.
BY_____ DEPUTY

## DEFAULT JUDGMENT

On the 15th day of July, 2002, came to be heard the above-entitled and numbered cause wherein **Daniel Reyna and Rose G. Reyna** are the Plaintiffs and **State Farm Lloyd's** is the Defendant. The Plaintiffs appeared by their attorney of record and announced ready for trial.

The Court finds that the Defendant, State Farm Lloyd's, although having been duly and legally cited to appear and answer, failed to appear and answer in this cause, and wholly made default. The Court finds that citation was served according to law and returned to the clerk where it remained on file for the time required by law. The Court has read the pleadings and the papers on file, and finds that the allegations of Plaintiffs' petition have been admitted.

The Court, therefore, GRANTS Plaintiff's Motion for Default Judgment against Defendant, State Farm Lloyd's, as to liability. Because the damages are unliquidated, the Court hereby sets the evidentiary hearing on damages on _____, 2002.

SIGNED on this 15th day of July, 2002.

_____
JUDGE PRESIDING

DATE 7-15-02

A true copy. I certify
JUAN D. SALINAS III
County Clerk, Hidalgo County, Texas
By_____ Deputy

**EXHIBIT C**



# TEJAS FORENSIC ENGINEERING, INC.



Forensic Report

## DANIEL AND ROSE REYNA RESIDENCE
3109 Quail Court
McAllen, Texas
Claim No. 53-Q526-462

Prepared for
STATE FARM INSURANCE COMPANY



EXHIBIT
D

March 2002

**FIRE CLAIMS**

SF 00696

MAR 2 9 2002

4455 South Padre Island Drive, Suite 55    Corpus Christi, Texas 78411    Office: (361) 814-0998    Fax: (361) 814-0930

# TEJAS FORENSIC ENGINEERING, INC.



March 28, 2002

Ms. Bernadette Galvan, Claim Specialist
State Farm Insurance Company
701 E. Expressway 83
McAllen, Texas 78502

Subject:    Forensic Report
            Daniel and Rose Reyna Residence
            3109 Quail Court
            McAllen, Texas
            Claim No. 53-Q526-462

Dear Ms. Galvan:

Per your request, our office has completed a forensic investigation of the above referenced residence.  The report presents our findings and conclusions regarding the cause of movement and distress that has occurred, and general recommendations for maintaining the performance of the foundation system.

Tejas Forensic Engineering, Inc. appreciates the opportunity to have provided our professional services for this project.  Please review the report and contact our office if you have any questions.

Sincerely,

Carlos Treviño III, P.E.

3-28-02

SF 00697

**FIRE CLAIMS**
MAR 2 9 2002

4455 South Padre Island Drive, Suite 55 ★ Corpus Christi, Texas 78411 ★ Office: (361) 814-0998 ★ Fax: (361) 814-0930

# *Table of Contents*

*Page*

Introduction ..................................................................................................... 1

Project Scope .................................................................................................... 1

Site Visit ............................................................................................................ 1

Site Observations ............................................................................................. 2

Relative Elevation Survey ................................................................................ 2

Soil Information ................................................................................................ 3

Plumbing Testing ............................................................................................. 4

Discussion ......................................................................................................... 4

Conclusions ....................................................................................................... 5

Recommendations ............................................................................................ 6


Exhibit A – Site Observations and Photographs

Exhibit B – Survey Drawings

Exhibit C – Soil Information

Exhibit D – Plumbing Report

SF 00698

## Introduction

This report presents the results of our forensic investigation of the Daniel and Rose Reyna residence located at 3109 Quail Court in McAllen, Texas. The investigation was authorized by Ms. Bernadette Galvan, Claim Specialist with State Farm Insurance Company, on January 31, 2002. The purpose of the investigation was to determine whether foundation movement or structural damage has occurred due to reported plumbing leakage.

## Project Scope

The scope of service for this project included:

➢ Document the current conditions throughout the interior and exterior of the residence.

➢ Conduct a relative elevation survey of the interior floors.

➢ Review the results of plumbing testing conducted by Shoreline Plumbing Company.

➢ Review site-specific soil information provided by Trinity Engineering/Kleinfelder.

➢ Analyze the available data and provide an objective engineering opinion regarding the cause of measurable foundation movement and the observed finish or structural damage.

➢ Provide general recommendations for required repairs and long-term maintenance of the structure.

The scope of this investigation did not include preparation of plans or specifications to complete or implement any recommendations presented in this report.

## Site Visit

Our site visit was completed on February 7, 2002 by Carlos Treviño III, P.E., and George Ghably, E.I.T. Mrs. Reyna was present at the site and informed us that they are the original owners of the 15-year-old house. This investigation was instigated due to a drain leak identified at the bathroom #2 water closet.

Additional information provided by the homeowner is as follows:

➢ There has been no previous foundation work.

➢ The patio was enclosed over five years ago.

**FIRE CLAIMS**

MAR 2 9 2002



1

**SF 00699**

- ➤ There are no problems with windows or doors in the house.
- ➤ Cracks in the interior and exterior finishes have developed over the past few years.
- ➤ The interior of the house is typically repainted about once per year; however, it was last repainted about two years ago.
- ➤ Leakage at the A/C unit wet the carpeting; cracks in the slab were noted when the carpet was removed last spring.
- ➤ The washer previously leaked and caused damage.
- ➤ The toilets occasionally back up, and the wax rings at the base of the toilets leak.
- ➤ There has been no unusual water usage.
- ➤ They are not living in the house at this time due to a concurrent mold investigation.

## *Site Observations*

Based on our observations, the residence was constructed with a conventionally reinforced concrete slab-on-grade foundation system. The exterior of the house is finished with brick veneer, and the roof is a hipped design with composition asphalt shingles. For the purpose of this report, the front of the house faces east.

Interior and exterior observations were completed throughout the residence. Descriptions of our observations along with photographs are presented in Exhibit A. Our observations do not include all conditions at the site, were limited to conditions unobstructed from view, and are representative of conditions that are pertinent to the conclusions of this investigation. If additional conditions or information are identified after submission of this report, we request the opportunity to review the information and determine any potential impact to this report.

## *Relative Elevation Survey*

A scaled diagram of the residence was generated at the site in order to plot relative floor elevations, which were measured with a Sokkia LP 30 laser level. For the purpose of our investigation, an arbitrary benchmark elevation of 5.00 feet was assumed at the front porch of the residence.

**SF 00700**



The floor elevations were adjusted to account for floor covering variations or steps and were utilized to generate a 1/4-inch (or 0.02 feet) elevation contour plan of the residence (Reference Sheet 2 of Exhibit B). The elevations at the sunken living room, the garage, and enclosed patio were not adjusted for clarity. As indicated on Sheet 2 of Exhibit B, the highest elevation (5.30 feet) in the living space was measured at the entry, while the lowest (5.20 feet) was measured at the utility room and bedroom #3, for an overall difference of approximately 1-1/4 inches. Differences of 2-1/4 inches and 2-3/4 inches were measured at the garage and enclosed patio, respectively, while the living room varied 7/8 inch. The elevation contours describe a general downward sloping pattern from the entry toward the perimeters. A portion of the measured elevation differences can be attributed to originally-constructed conditions.

## *Soil Information*

We obtained a soil sample along the garage for analysis. The sample was provided to Trinity Engineering/Kleinfelder, and the results of their analysis are presented in Exhibit C. Testing of the soils included Atterberg Limit tests, as described by test method ASTM D 4318. Atterberg Limits are a combination of Liquid Limit (LL), Plastic Limit (PL), and Plasticity Index (PI), as follows:

**Liquid Limit (LL)** - The moisture content at which the soils begin to change from a plastic to liquid state.

**Plastic Limit (PL)** - The moisture content at which the soils change from a plastic state to a semi solid state.

**Plasticity Index (PI)** - The range of moisture contents where soils behave plastically; the difference between the Liquid Limit and Plastic Limit. In general, PI values and shrink/swell potential can be characterized as follows:

| Plasticity Index | Shrink/Swell Potential |
|------------------|------------------------|
| Less than 18 | Low |
| 18 – 29 | Moderate |
| 30 or Greater | High |

SF 00701



FIRE CLAIMS

MAR 2 9 2002

3

The sample obtained at this site exhibited a liquid limit of 39, a plastic limit of 11, and plasticity index of 28. Therefore, these soils exhibit a moderate shrink/swell potential.

## *Plumbing Testing*

The plumbing systems were tested by Shoreline Plumbing Company in October 2001. According to their plumbing report, the plumbing consists of a PVC drain system and a copper water supply system (Reference Exhibit D). There was no leakage reported in the water supply system, after maintaining a pressure of 54 psi for 15 minutes.

An overall static test of the drain system was conducted by blocking the main exit along the front of the house and filling the lines with water to the finished floor elevation. The water level was monitored at the master bathroom water closet riser and indicated a drop of 2 inches in 30 minutes. Further isolation testing identified one leak in the system at the bathroom #2 water closet 90 degree elbow connection. Shoreline also tested and inspected the above-grade portion of the drain system; several conditions were reported that require attention.

Flow tests were then performed in order to determine whether volume losses were occurring during normal use of the plumbing fixtures. In this case, 5 gallons (or 80 cups) of water was introduced into the bathroom #2 water closet and recovered at the system exit. The flow tests indicated 100% of the water was recovered during three consecutive trials.

## *Discussion*

As described in the introduction of this report, the focus of this investigation was to determine whether the plumbing leakage reported by Shoreline Plumbing Company has caused foundation movement resulting in structural damage to the residence. In analyzing the potential cause of foundation movement, it is imperative to consider all potential contributing factors. Factors generally considered in analyzing foundation performance include, but are not limited to, characteristics of the supporting soils, seasonal variations in the soil moisture content, site drainage patterns, leakage of the water supply or drain systems, the design/construction of the foundation, vegetation effects, and previous foundation repairs.

4

SF 00702



FIRE CLAIMS

AR 2 9 2002

Trinity Engineering/Kleinfelder confirmed the existence of moderately-expansive clay soils at the site of the Reyna residence. Expansive soils are prone to seasonal moisture and volume changes, particularly within the upper stratum or "active zone." Shallow foundation systems constructed on expansive soils must therefore be designed to resist potential soil volume changes. Although slab-on-grade foundations are considered relatively rigid, differential movements can occur, resulting in foundation deflection and damage. Plumbing leaks below the slab pose a significant potential to impact foundation behavior. Increased moisture can result in soil swelling and measurable upward foundation movement. Significant movement typically manifests as distress to the finishes in the vicinity of the leakage.

Based on our site observations and the current elevation survey, we find no evidence that the reported leakage has impacted the performance of the foundation system or caused distress. The foundation currently exhibits a uniform downward slope toward the exposed perimeters. The leak is located within the downward slope, with no discontinuities in the elevations. The floor elevations at bathroom #2 are also comparable to other areas throughout the house.

The minor foundation movement and distress observed at the Reyna residence are attributed to the long-term effects of naturally-occurring variations in soil moisture, the drying effects of the surrounding vegetation, and limited preventative water maintenance around the structure. Overall, the elevation difference (1-1/4 inches) across the living area and the minor distress are considered minimal and are indicators that the foundation system is performing well and in accordance to its intended design.

## *Conclusions*

Based on our review and analysis of the data described and discussed above, we have concluded that:

1. The plumbing leakage identified by Shoreline Plumbing Company has not impacted the performance of the foundation or caused distress.

SF 00703



FIRE CLAIMS

MAR 2 9 2002

5

2. The above-grade conditions reported by Shoreline Plumbing Company have impacted the surrounding finishes and possibly the framing members.

3. The minor movement and distress observed are attributed to the long-term effects of seasonal moisture changes, the drying effects of the nearby vegetation, and limited preventative water maintenance around the structure.

## *Recommendations*

1. Repair the reported plumbing leakage, as required by local building code.

2. Address all the above-grade conditions reported by Shoreline Plumbing Company and repair any impacted finishes/framing, as required.

We have included the following maintenance recommendations as an aid in maintaining the foundation system.

3. Implement a watering program that maintains constant moisture content in the soils along the perimeter of the structure throughout the year.  This can be accomplished by using an automatic sprinkler system and/or soaker hoses along the perimeter of the foundation.

4. Install root barrier systems along the perimeter of the structure to aid in preventing root systems from absorbing moisture adjacent and below the foundation.

5. Install a complete perimeter roof gutter system and ensure that all areas are adequately graded to direct runoff away from the structure.

If the homeowner implements these recommendations, we suggest postponing any cosmetic repairs for a minimum of six months from the date the recommendations are completed.  This delay in repairs will allow the soil moisture content to stabilize, therefore reducing the possibility of the occurrence of distress to the repaired areas.

6                    **SF 00704**



# Exhibit A

---

## Site Observations and Photographs

SF 00705

## *INTERIOR OBSERVATIONS*

### *Entry*

➢ No distress observed.

### *Dining Room*

➢ Cracked ceramic tile at the center (Reference Photo No. 1).
➢ Crack in the ceiling at the kitchen passageway.

### *Kitchen*

➢ Water stains below the kitchen sink (Reference Photo No. 2).
➢ Cracks along the drywall corner beads at the windows (Reference Photo No. 3).

### *Utility Room*

➢ Crack across the floor (Reference Photo No. 4).
➢ Water damage at the washer area (Reference Photo No. 5).
➢ Chipped floor tile at the garage door.

### *Garage*

➢ Crack in the concrete floor at the freezer (Reference Photo No. 6).
➢ Crack in the floor at the garage door.

### *Breakfast Area*

➢ Crack in the ceiling at the kitchen juncture; minor separation of the wall cabinet.
➢ Hairline crack in the floor tile at the kitchen juncture.

### *Enclosed Patio*

➢ Crack in the brick mortar above the breakfast area door (Reference Photo No. 7).
➢ Caulked trim separation at the left side of the master bedroom door (Reference Photo No. 8).

### *Living Room*

➢ Crack in the ceiling at the entry/hallway juncture (Reference Photo No. 9).

1



➢ Minor separation along the top of the fireplace.

➢ Crack in the ceiling at the breakfast area juncture.

### *Hallway*

➢ No distress observed.

### *Master Bedroom*

➢ Stain in the ceiling at the hallway door.

### *Master Bathroom*

➢ Ceiling crack along the south wall/ceiling juncture.

➢ Water stains at the shower door (Reference Photo No. 10).

➢ Previous caulking and loose tiles at the shower window (Reference Photo No. 11).

➢ Separations in the tile grout at the shower.

➢ Water stains in the cabinets below the sinks (Reference Photo No. 12).

➢ Hairline crack in the ceramic tile at the water closet doorway.

### *Bedroom #2*

➢ The carpet in this room was removed after A/C leakage last year; several cracks in the exposed concrete surface.

➢ Stain in the ceiling at the doorway (Reference Photo No. 13).

➢ Water-stained trim and carpet tack strip inside the closet (Reference Photo No. 14).

➢ Stain in the ceiling inside the closet (Reference Photo No. 15).

➢ Crack at the southwest corner of the ceiling.

➢ Crack along the corner bead at the top of the window.

### *Bedroom #3*

➢ Crack in the concrete floor along the west wall (Reference Photo No. 16).

➢ The hallway door binds in its frame.

➢ Crack at the top left corner of the window.



### Bathroom #2

➢ Water stains around the base of the toilet (Reference Photo No. 17).

➢ Water stains inside the vanity cabinet (Reference Photo No. 18).

➢ Water stains and previously caulked separations at the tub surround.

➢ Cracks in the tile grout at both ends of the tub.

### Bedroom #4

➢ Minor cracks around the windows.

## EXTERIOR OBSERVATIONS

### East Side

➢ General view of the front side of the house; tree near bedroom #4 (Reference Photo No. 19).

➢ Separation at the right side of the overhead garage door (Reference Photo No. 20).

➢ Cracks in the brick mortar at the left side of the dining room bay window.

➢ Cracks in the concrete sidewalk.

➢ Cracks in the brick mortar at the bedroom #4 bay windows (Reference Photo No. 21).

➢ Exposed rebar at the garage.

➢ Crack in the brick veneer at the center of the garage wall.

### North Side

➢ General view of the north side of the house; trees in the neighbor's yard (Reference Photos No. 22 and 23).

### West Side

➢ General view of the west side of the house (Reference Photos No. 24, 25, and 26).

➢ Separation in the brick veneer at the master bathroom fence (Reference Photo No. 27).

➢ The patio slab drains toward the house (Reference Photo No. 28).

### South Side

➢ Crack in the brick mortar at the utility room/garage juncture.

➢ Poor drainage at the utility room (Reference Photo No. 29).

3





SF 00709



SF 00710



SF 00711








SF 00712







SF 00713

# *Exhibit B*

---

## *Survey Drawings*

**FIRE CLAIMS**

MAR 2 9 2002

SF 00714

Tejas Forensi Engineering, Inc.

**T F E**

SITE ⟵⟶ N

MSTR BATH

ENCLOSED PATIO

MASTER BEDROOM

F/P

BREAKFAST AREA

LIVING ROOM

HALLWAY

BEDROOM #2

KITCHEN

BEDROOM #3

ENTRY

BATH #2

STORAGE

UTILITY ROOM

DINING ROOM

BEDROOM #4

GARAGE

SF 00715

**FIRE CLAIMS**

MAR 2 9 2002

| REYNA RESIDENCE | SITE PLAN | PROJECT NO. TFE132 |
|---|---|---|
| DATE: 02-07-02 | SCALE: 1"= 10' | SHEET 1 |



LOW AREA

LOW AREA

HIGH AREA

SITE

SF 00716

| REYNA RESIDENCE | ELEVATIONS | PROJECT NO. TFE132 |
| --- | --- | --- |
| DATE: 02-07-02 | SCALE: 1"= 10' | SHEET 2 |



LOW AREA

LOW AREA

HIGH AREA

LEAK AREA

FIRE CLAIMS

MAR 2 9 2002

SITE

TEJAS FORENSI ENGINEERING, INC.

| REYNA RESIDENCE | PLUMBING LAYOUT | PROJECT NO. TFE132 |
|---|---|---|
| DATE: 02−07−02 | SCALE: 1"= 10' | SHEET 3 |

SF 00717

# *Exhibit C*

---

# *Soil Information*

**FIRE CLAIMS**

MAR 2 9 2002

SF 00718



# TRINITY ENGINEERING/KLEINFELDER
*An Employee-Owned Company*
P.O. Box 4293   Corpus Christi, Texas 78469   (361)854-4774

TO: Tejas Forensic Engineering, Inc.
4455 S. Padre Island Drive, Suite 55
Corpus Christi, Texas 78411

**TETCO PN:** 11528

**PROJECT:** Miscellaneous Testing

**DATE:** 02/15/02
**REPORT NO.:** 2020009

**TECHNICIAN:** D Alaniz

| | |
|---|---|
| **REPORT ON:** | Atterberg Limit |
| **TEST METHOD:** | ASTM D4318 |
| **MATERIAL DESCRIPTION:** | Brown Clay; S-2588 |
| **SAMPLE LOCATION:** | 3109 Quail Court; McAllen, Texas |
| **TEJAS PROJECT NO.** | TFE #132 |
| **SAMPLED:** | picked up at Tejas office by R. Perez on 02/08/02 |
| **RESULTS:** | |

### ATTERBERG LIMIT
| | |
|---|---|
| LIQUID LIMIT | 39 |
| PLASTIC LIMIT | 11 |
| PLACTICITY INDEX | 28 |

**COPIES TO:**    1 - Above

REPORT REVIEWED BY:
TRINITY ENGINEERING/KLEINFELDER

Jerry Lipstreu, Area Manager

The results shown on this report are for the exclusive use of the client for whom they were obtained and apply only to the samples tested and/or inspected. They are not intended to be indicative of qualities of apparently identical products. The use of our name must receive prior written approval. Reports must be reproduced in their entirety.

SF 00719

# *Exhibit D*

---

# *Plumbing Report*

SF 00720



# *SHORELINE PLUMBING CO.*

4307 So. Port Ave. #125
CORPUS CHRISTI, TEXAS   78415
361-992-0700
FAX. 361-853-9492

State Farm Insurance
"Hand Delivered"

DEC 1 7 2001

McAllen FCO

Drop_____Pull_____
Route To _____

State Farm Insurance Company

Mr. Larry Lewis
PO Box 2378
McAllen, Tx 78502
800-272-8757/956-632-6860

Re: Claim 53-Q363-680
53-Q363-681
53-Q363-682

Mr. & Mrs. Daniel Reyna
3109 Quail Ct.
McAllen, Tx 78502
956-686-4223
Southern Ecology Mr. Mike Stringer

16 October 2001

With regard to all references in this report, the domestic water system is defined as follows:
domestic water piping located above/below floor level and within the perimeter beams of the
building structure.

The purpose of the hydrostatic test of the domestic water system within the perimeter beam of the
building structure, is to determine if the system will hold water/air. The test is performed by
blocking off the domestic water system and then fill with water/air. If a water/air loss is recorded,
isolation testing would be necessary to locate the leaks in the system.

## HYDROSTATIC TEST:

A hydrostatic test was performed at 3109 Quail Ct., McAllen, Tx 78504 on 6 October 2001 on
the domestic water system. The hose bib at the house service riser was replaced to facilitate
testing. This test reveals no loss of pressure from fifty-four (54) psi in a fifteen (15) minute
period, indicating no leaks at this time. The pipe and fittings are copper in good condition under
the slab.

*Note: The furnished drawings are used by Shoreline Plumbing Co. for bid purposes only and are not intended to be used to locate drain lines in their exact locations.*

SF 00721

**FIRE CLAIMS**

MAR 2 9 2002



# *SHORELINE PLUMBING CO.*

4307 So. Port Ave. #125
CORPUS CHRISTI, TEXAS  78415
361-992-0700
FAX. 361-853-9492

State Farm Insurance
"Hand Delivered"

DEC 1 7 2001

McAllen FCO
Drop_____Pull_____
Route To_____

State Farm Insurance Company

Re: Claim 53-Q363-680
53-Q363-681
53-Q363-682

Mr. Larry Lewis
PO Box 2378
McAllen, Tx 78502
800-272-8757/956-632-6860

Mr. & Mrs. Daniel Reyna
3109 Quail Ct.
McAllen, Tx 78502
956-686-4223
Southern Ecology Mr. Mike Stringer

16 October 2001

With regard to all references in this report, the sanitary drain system is defined as follows: sanitary drain piping located below floor level and within the perimeter beams of the building structure.

The purpose of the static test of the sanitary drain system within the foundation is to determine if the system will hold water. The test is performed by blocking off the building drain at the perimeter beam, the system is then filled with water to the finished floor level. If a water loss is recorded, isolation testing would be necessary to locate the leaks in the system. *Due to changing soil and weather conditions in this area, testing results may vary, from any given point of time.*

## STATIC TEST:

A static test was performed at 3109 Quail Ct., McAllen, Tx 78502 on 6 October 2001 on the sanitary drain system. This is a slab constructed dwelling.  Installed a test ball through the clean out and inflated at the front perimeter beam of the structure, filled the system with water. Monitored the test from bath #1's water closet riser. Recorded a loss of two (2) inches in a thirty (30) minute period, indicating a leak in the system.  The pipe and fittings are PVC in fair condition.

*Conclusions and Recommendations:*
*The building drain leaks.  Isolation testing is required to locate the leaks.*

SF 00722



# SHORELINE PLUMBING CO.
4307 So. Port Ave. #125
CORPUS CHRISTI, TEXAS   78415
361-992-0700
FAX. 361-853-9492

State Farm Insurance Company

Mr. Larry Lewis
PO Box 2378
McAllen, Tx 78502
800-272-8757/956-632-6860

Re: Claim 53-Q363-680
53-Q363-681
53-Q363-682
Mr. & Mrs. Daniel Reyna
3109 Quail Ct.
McAllen, Tx 78502
956-686-4223
Southern Ecology Mr. Mike Stringer

16 October 2001

With regard to all references in this report, the sanitary drain system is defined as follows:
sanitary drain piping located above floor level and within the perimeter beams of the building
structure.

The purpose of the static test of the sanitary drain system within the foundation is to determine if
the system will hold water/air. The test is performed by blocking off the drain, the system is then
filled with water/air above the finished floor level. If a water/air loss is recorded, isolation testing
would be necessary to locate the leaks in the system.

## ABOVE GRADE LEAK LOCATE/ISOLATION TEST:
An above grade leak locate/isolation test was performed at 3109 Quail Ct., McAllen, Tx 78502
on 6 October 2001 on the following fixtures:

**Kitchen:**     This drain was not tested at this time.  The garbage disposal p-trap is leaking
water to the cabinet floor.  (The p-trap nut was repaired on 6 October 2001)

Note:     1.  The s-trap on the kitchen drain is improper plumbing
2.  There is prior water damage to the cabinet floor under the garbage disposal.
3.  The caulking round the sink is in poor condition.

## Air Conditioner:
The a/c is located in the attic.  The a/c condensate drains to the side of the
residence.

SF 00723

**Bath #2:**

Tub:       Sealed tub drain at slab level with a test ball and filled with water to the flood rim of fixture. Recorded a zero (0) loss in a fifteen (15) minute period, indicating no leaks at this time.

Note:     The tub faucet is missing the handle.

Lavatory:   Sealed lavatory drain at slab level with a test ball and filled with water to the flood rim of fixture. Recorded a zero (0) loss in a fifteen (15) minute period, indicating no leaks at this time.

Note:     The faucet housing is corroded, not leaking at this time.

Water Closet: A visual inspection reveals no leaks at this time.

Note:     The flapper is allowing water to seep past. (not leaking to the floor)

**Bath #1:**

These fixtures were not tested at this time, but the following plumbing concerns were notated:

Shower:     1. The shower faucet spout is corroded.
              2. The shower doorframe is corroded, allowing water to leak out to the floor.
              3. The grout in the shower is in poor condition.
              4. The shower window seal caulking is peeling away.
              5. Lavatory #1 water faucet housing is corroded.
              6. The water closet is loose, but not leaking at this time.

**Bar Sink:**   This fixture was not tested at this time. The vent has been capped off in the attic. The vent does not exit through the roof.

*Note: The furnished drawings are used by Shoreline Plumbing Co. for bid purposes only and are not intended to be used to locate drain lines in their exact locations.*

SF 00724

**FIRE CLAIMS**

MAR 2 9 2002

## LEAK LOCATE/ISOLATION TEST:

A leak locate/isolation test was performed at the above-mentioned address on 6 October 2001 on the sanitary drain system. This test reveals a loss of water below the foundation in one (1) location, bath #2's water closet sanitary tee/90 connection.

*Conclusions and Recommendations:*
*There is a leak in the area of bath #2's water closet. Locate and repair the leak by tunneling to the area.*

## FLOW TEST:

A flow test was performed three (3) times on these plumbing fixtures on 6 October 2001. A total of eighty (80) cups were used per test. The flow was performed by introducing a known volume of water into each drain and capturing the water at the cleanout and remeasuring. The results are as follows:

| Fixture | Amount In | Amount Out | Loss/Gain |
|---|---|---|---|
| Bath #2 Water Closet | 80 cups | 80 cups | 0 cup loss/gain |
| | 80 cups | 80 cups | 0 cup loss/gain |
| | 80 cups | 80 cups | 0 cup loss/gain |

*Note: The furnished drawings are used by Shoreline Plumbing Co. for bid purposes only and are not intended to be used to locate drain lines in their exact locations*



REYNA RESIDENCE
3109 QUAIL CT.
MCALLEN, TX 78502

SHORELINE PLUMBING CO.
4307 S. PORT AVE. #125
CORPUS CHRISTI, TX 78415
LEAK LOCATE/ISOLATION TEST

NOTE: THE FURNISHED DRAWINGS ARE USED BY SHORELINE PLUMBING CO. FOR BID PURPOSES ONLY
AND ARE NOT INTENDED TO BE USED TO LOCATE DRAIN LINES IN THEIR EXACT LOCATIONS.



REYNA RESIDENCE
3109 QUAIL CT.
McALLEN, TX 78502

VENT

BATH #1

VENT

LEAK
GARBAGE DISPOSAL/KITCHEN
WASTE TRAP CONNECTION
IS LEAKING WATER TO
THE CABINET FLOOR
(THIS WAS REPAIRED 10/68)

VENT

VENT

VENT CAPPED BELOW ROOF

VENT

BATH #2

VENT

FRONT
PORCH

CONCRETE SIDEWALK

CLEAN OUT

GARAGE

CONCRETE DRIVEWAY

SHORELINE PLUMBING CO
4307 S. PORT AVE. #125
CORPUS CHRISTI, TX 78415
ABOVE GRADE LEAK LOCATE/ISOLATION TEST

NOTE:THE FURNISHED DRAWINGS ARE USED BY SHORELINE PLUMBING CO. FOR BID PURPOSES ONLY
AND ARE NOT INTENDED TO BE USED TO LOCATE DRAIN LINES IN THEIR EXACT LOCATIONS.

SF 00727

**Daniel & Rose Reyna    3109 Quail Ct.    McAllen, TX 78502**



Front of the house.



Front of the house.



Hydrostatic test.

SF 00728

**FIRE CLAIMS**

MAR 2 9 2002

**Daniel & Rose Reyna     3109 Quail Ct.     McAllen, TX 78502**





Poor caulking around the kitchen sink.

Plumbing under the kitchen sink - s-trap, not legal.





Under the kitchen sink - garbage disposal leaks.

Garbage disposal drain is leaking.

SF 00729

*FIRE CLAIMS*

MAR 2 9 2002

**Daniel & Rose Reyna** **3109 Quail Ct.** **McAllen, TX 78502**



Water damage under the kitchen sink.

Wall paneling has been previously removed under the kitchen sink.

SF 00730

**Daniel & Rose Reyna      3109 Quail Ct.      McAllen, TX 78502**





Bath #1's shower window seal
caulking is peeling away.

Bath #1's shower grout is missing.





Bath #1's shower door frame leaks.

Bath #1's shower spout in poor condition.

SF 00731

**Daniel & Rose Reyna    3109 Quail Ct.    McAllen, TX 78502**



Bath #1's lavatory - His.

Bath #1's shower tile grout.



Bath #1's shower pan test.

SF 00732

**FIRE CLAIMS**

MAR 2 9 2002

**Daniel & Rose Reyna    3109 Quail Ct.    McAllen, TX 78502**



Bath #2's lavatory faucet.



Bath #2's tub faucet handle is missing.



Bath #2's tub trip lever is corroded.



Bath #2's shower arm riser test.

SF 00733

FIRE CLAIMS

MAR 2 9 2002

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DANIEL REYNA AND | § | |
| ROSE G. REYNA | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. M-02-329 |
| | § | |
| | § | |
| STATE FARM LLOYDS | § | |

## AFFIDAVIT OF RICK H. ROSENBLUM

| | |
|---|---|
| IN THE STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

I, Rick H. Rosenblum being duly sworn, deposes and says:

1.      I am over eighteen (18) years of age, and I am otherwise competent to make this Affidavit. I have personal knowledge of the facts stated in this Affidavit, and they are true and correct.

2.      I am an attorney licensed to practice in the State of Texas. I am a partner with the law firm of Akin, Gump, Strauss, Hauer & Feld, L.L.P. I am one of the lawyers representing State Farm Lloyds in the above-captioned action and have personal knowledge of the matters set for herein. I have been licensed and a member in good standing of the State Bar of Texas since 1988. I have never been subject to any disciplinary proceeding. I have handled insurance bad faith litigation for over twelve years.

3.      I make this affidavit solely for the purpose of and with regard to the section of State Farm's Motion to Set Aside Partial Default Judgment relating to meritorious defenses.

4.      I am lead counsel for State Farm in this matter. Based upon my experience in handling insurance bad faith lawsuits in Texas over the past twelve years, and based upon my review of the pertinent documents in this matter, State Farm has several meritorious defenses to the claims asserted by the Plaintiffs. For example, State Farm based its denial of the plaintiff's foundation claim upon the work of a licensed professional engineer employed by Tejas Engineering, Inc. who concluded that any foundation movement at the plaintiffs' house was caused by factors other than a plumbing leak (which would be the only cause covered under the insurance contract at issue). The plaintiffs provided State Farm with no information to controvert the conclusions reached by the Tejas engineer. Accordingly, State Farm had a reasonable basis to deny that claim, which it did in a reasonably prompt fashion.


EXHIBIT
E

5.     Further, State Farm conducted a reasonable investigation into the mold claims made by the plaintiffs.  State Farm hired competent professionals to investigate the mold claims, the sources of coverage, and the remediation options.  State Farm made prompt payments based upon the information gathered during these investigations, and made prompt claim decisions on these claims.  State Farm has asserted a payment defense based upon the payments it made to the plaintiffs (totaling almost $60,000).

6.     State Farm's mold claim decisions were reasonable in that State Farm based its decisions upon its investigation, which included analysis from a certified industrial hygienist and a remediation estimate from a qualified contractor who agreed to perform the work for the amount of its bid.  The applicable standards under Texas law do not subject an insurer to liability when the insurer has a reasonable basis to support its decision.  Since State Farm formed decisions using the investigative work of qualified experts (among other reasonable factors), State Farm has a meritorious defense to the plaintiffs' extra-contractual claims.

Further Affiant Sayeth not.

DATED:      July 18th, 2002

_____
RICK H. ROSENBLUM

Subscribed to and sworn to before me, this 18th day of July, 2002.

_____
Notary Public

My commission expires: 4/19/03

CYNTHIA L. MARTINEZ
Notary Public, State of Texas
My Comm. Exp. 04/19/03

CAUSE NO. CL-39,332-B

| | | |
|---|---|---|
| DANIEL REYNA AND | § | IN THE COUNTY COURT |
| ROSE G. REYNA | § | |
| | § | JUL 15 2002 |
| VS. | § | AT LAW NO. 2 |
| | § | |
| | § | JOHN D. SALINAS III, COUNTY CLERK |
| STATE FARM LLOYDS | § | HIDALGO COUNTY, TEXAS |
| | § | HIDALGO COUNTY, TEXAS DEPUTY |

## DEFENDANT STATE FARM LLOYDS' VERIFIED ORIGINAL ANSWER TO PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

Defendant State Farm Lloyds ("State Farm"), without waiving any of its defenses, files its Verified Original Answer and respectfully shows the Court as follows:

### General Denial

1.      Pursuant to Rule 92 of the Texas Rules of Civil Procedure, State Farm hereby exercises its right to require Plaintiffs to prove their allegations by a preponderance of the credible evidence.

### Verified Denial

2.      Pursuant to Rules 54 and 93 of the Texas Rules of Civil Procedure, Defendant denies that all conditions precedent have been performed and/or occurred.  In particular, Plaintiffs have failed to submit proof that their property has incurred a loss that is covered as an exception to exclusions (f) and (i) of the insurance policy on her property.  Additionally, Plaintiffs have failed to submit proof that the damage to their property was caused solely by a covered peril, separate from damage caused by excluded perils.



EXHIBIT

F

### *Affirmative Defenses*

3.     In addition to and without waiving any of the foregoing, State Farm asserts the following matters as affirmative defenses:

       a.     Pursuant to the following exclusions, the homeowner's insurance policy issued to Plaintiffs does not cover or excludes the Plaintiffs' loss if caused by:

          "f.     We do not cover loss caused by:

            (1)     wear and tear, deterioration or loss caused by any quality in property that causes it to damage or destroy itself. . .

            (2)     rust, rot, mold or other fungi.

            (3)     dampness of atmosphere, extremes of temperature.

            (4)     contamination...

          h.     We do not cover loss under cover A (Dwelling) caused by settling, cracking, bulging, shrinkage or expansion of foundations, walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

          i.     We do not cover loss caused by or resulting from flood, surface water, waves, tidal water or tidal waves, overflow of streams or other bodies of water or spray from any of these whether or not driven by wind. . . ."

The foregoing exclusions apply in this case.

       b.     Any award to Plaintiffs must be offset by all prior payments made by State Farm to Plaintiffs for access, repair and ALE.

c.   Plaintiffs' claims are barred, in whole or in part, pursuant to the conditions

and obligations under the insurance policy issued to Plaintiffs:

"(3)   Duties After Loss

a.   **Your duties after loss.**  In case of a loss to covered
property caused by a peril insured against, you must:

(1)   give prompt written notice to us of the facts relating
to the claim.

…

(3)   (a)   protect the property from further damage.

(b)   make reasonable and necessary repairs to
protect the property.

(c)   keep an accurate record of repair expenses."

10.   Suit Against Us.  No suit or action can be brought unless the policy
provisions have been complied with.

d.   Plaintiffs' claims are barred in whole or in part by the Doctrine of Laches.

Plaintiffs unreasonably delayed in reporting their claimed losses.  Further,

Plaintiffs have received payment for access, repair and ALE, but have

failed to repair the damage at their house or prevent further damage.

e.   Plaintiffs' claims are barred in whole or in part by Plaintiffs'

failure to mitigate their damages.

f.   Plaintiffs' damages, if any, must be offset by the amount of the applicable

policy deductibles.

g.   Plaintiffs' actual damages, if any, must be limited by the amount set forth

in the policy limitations provisions of their policy.

h.   Any award of exemplary damages must be limited in accordance with the

provisions of Texas Civil Practices & Remedies Code § 41.008.

3

    i.        Plaintiffs' claims for punitive damages against State Farm cannot be sustained because under Texas law, an award of punitive damages without proof of every element beyond a reasonable doubt would violate State Farm's right under Amendments IV, V, VI, and XIV of the United States Constitution and under Sections 9, 10, 14, and 19 of Article I of the Texas Constitution.

    j.        Plaintiffs' claims for punitive damages against State Farm cannot be sustained, because an award of punitive damages under Texas law for the purposes of compensating Plaintiffs for elements of damages not otherwise recognized by Texas law would violate State Farm's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

### *Jury Demand*

Defendant State Farm hereby demands a trial by jury.

### *Prayer*

WHEREFORE, Defendant State Farm Lloyds prays:

1.      That Plaintiffs recover nothing of and from Defendant, and that this Court enter a judgment that Defendant go hence without delay with all costs of court; and

2.      That State Farm be granted such other and further relief to which it shows itself justly entitled.

064253.0000 SAN ANTONIO 271098 v1

Respectfully submitted,

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
300 Convent Street, Suite 1500
San Antonio, Texas  78205
Telephone: (210) 281-7000
Telecopier: (210) 224-2035


RICK H. ROSENBLUM
Attorney-in-Charge
State Bar No. 17276100
DAVID R. STEPHENS
State Bar No. 19146100
MONICA J. RODRIGUEZ
State Bar No. 24027792

—and—

VICTOR VICINAIZ
State Bar No. 20562300
ROERIG, OLIVEIRA & FISHER, L.L.P.
506 East Dove Avenue
McAllen, Texas 78504-2241
Telephone: (956) 631-8049
Telecopier: (956) 631-8141

ATTORNEYS FOR DEFENDANT
STATE FARM LLOYDS

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was sent via *certified mail, return receipt requested* to the following:

Reynaldo Ortiz
Gina Karam Millin
Law Office of Reynaldo Ortiz, P.C.
1109 W. Nolana, Suite 204
McAllen, Texas  78504

on this ___ day of July, 2002.

MONICA J. RODRIGUEZ

6

## VERIFICATION

STATE OF TEXAS      §
                              §

COUNTY OF HIDALGO   §

      Before me, the undersigned authority, on this day personally appeared Jonas Saenz, who being by me duly sworn on his oath deposed and said:

      1.     My name is Jonas Saenz. I am over the age of 21, I have never been convicted of a felony or a crime involving moral turpitude, and I am otherwise competent to make this verification.

      2.     I am a Team Manager responsible for supervising claims on behalf of State Farm Lloyds (hereinafter referred to as "State Farm"), including the claim submitted by Daniel Reyna and Rose G. Reyna which is the basis of the lawsuit. Therefore, I have personal knowledge of the facts stated herein and they are all true and correct.

      3.     Specifically, I have reviewed paragraph number 2 of State Farm Lloyds' Original Answer and the statements of fact contained within that paragraph are true and correct.

                               JONAS SAENZ

Subscribed and sworn before me on this the ____ day of July, 2002.

                               NOTARY PUBLIC
                               STATE OF TEXAS

LEXSEE 2002 U.S. Dist. LEXIS 3348

**ROBERT N. GOLDSTEIN, Plaintiff, v. PHILIP ALEXANDER GORDON and WWW.CHEATERS.COM, Defendants.**

**CIVIL ACTION NO. 3:00-CV-0022-P**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**2002 U.S. Dist. LEXIS 3348**

**February 27, 2002, Decided**

**February 27, 2002, Filed; February 28, 2002, Entered**

**DISPOSITION:**
[*1] Defendant's motion to set aside default judgment was granted and default judgment vacated. Defendant's motion to dismiss with respect to defendant Gordon was granted. Defendant's motion for sanctions was granted. Plaintiff's claims against defendants Philip Alexander Gordon and WWW.Cheaters.com dismissed without prejudice.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff individual sued defendants, a domain name and its registrant, alleging unfair competition under the Lanham Act. The individual alleged that he was unable to locate the registrant and sought an in rem proceeding against the domain name. After the domain failed to respond, the court entered default judgment. The registrant moved to set aside the default judgment, moved to dismiss, and sought sanctions under Fed. R. Civ. P. 11.

**OVERVIEW:** The registrant filed the domain name with an internet domain name registrar. Several years later the individual sued. The court issued a summons at an address in a foreign country which was never served. The individual alleged that he was unable to locate the registrant, however attached to the consent motion to tender control of the domain name was an address for the registrant in the U.S. The court entered a default judgment, granted the consent motion, and transferred ownership of the domain name to the individual. The registrant moved to set aside the default. The court found that the individual failed to demonstrate that the registrant was not subject to in personam jurisdiction in any judicial district in the U.S because he resided in California. The individual was able to maintain an in rem action against the domain name only because he could not obtain personal jurisdiction over the registrant. Because the registrant was subject to personal jurisdiction, it was improper for the individual to proceed in rem against the domain name. Consequently, the court could not assert jurisdiction over the domain name and the default judgment was rendered void.

**OUTCOME:** The registrant's motion to set aside the default judgment was granted and the default judgment was vacated. The registrant's motion to dismiss with respect to himself was granted. The registrant's motion for sanctions was granted. The individual's claims against the registrant and the domain name were dismissed without prejudice.

**CORE CONCEPTS**

*Civil Procedure : Early Pretrial Judgments : Default : Relief From Default*
Default judgments are not favored by the law because courts encourage trials on the merits. In fact, default judgments are a drastic remedy, not favored by the Federal Rules of Civil Procedure and resorted to by courts only in extreme situations. In ruling on a motion to set aside default judgment, a district court should resolve all doubts in favor of the party seeking relief from the judgment. A motion to set aside a default judgment is addressed to the sound discretion of the district court.


EXHIBIT
G

Case 7:02-cv-00329   Document 2   Filed in TXSD on 07/19/02   Page 72 of 84

Page 2
2002 U.S. Dist. LEXIS 3348, *

*Civil Procedure : Early Pretrial Judgments : Default : Relief From Default*

Fed. R. Civ. P. 60(b) allows a district court to relieve a party or its representative from any judgment, including a default judgment, on the basis of (1) fraud, misrepresentation, or misconduct of the adverse party; (2) the judgment being void; or (3) any other reason justifying relief from the judgment. To prevail on a motion to set aside default judgment, a defendant must also show good cause. Courts uniformly consider the following factors when determining whether good cause exists: whether the default was willful, whether setting it aside will prejudice the adversary, and whether a meritorious defense is presented. These factors are not talismanic, and a district court may consider others. An additional factor that generally influences a court's exercise of discretion is its assessment of the parties' good faith or lack thereof. For instance, when a party appears unduly anxious to win by default, a court may be generous toward the party moving for relief. On the other hand, when the non-defaulting party endeavors to encourage the other party to respond, provides sufficient opportunity for the opponent to correct the default, or does not press too rapidly for the entry of the default and the subsequent judgment, a court typically will conclude that there is no reason to give the defaulting party relief.

*Civil Procedure : Early Pretrial Judgments : Default : Relief From Default*

In the context of a motion for relief from default, courts look to two factors to determine voidness: (1) whether a district court lacks jurisdiction over the subject matter or the parties or (2) if a court acted in a manner inconsistent with due process.

*Civil Procedure : Jurisdiction : Personal Jurisdiction & In Rem Actions : In Rem Actions*
*Cyberlaw : Trademarks : Internet Domain Names*

The Anticybersquatting Consumer Protection Act provides two avenues for suing a defendant in a trademark action. A trademark owner may proceed either in personam against an infringer, or in certain circumstances where this cannot be done, the owner may proceed in rem against the domain name; a mark owner may not proceed against both at the same time. A trademark owner may file an in rem cause of action only where a district court finds that the owner of the mark (1) is not able to obtain in personam jurisdiction over a person who would be a defendant in the action or (b) through due diligence is not able to locate the person who would be a defendant in the action. 15 U.S.C.S. § 1125(d)(2)(A)(i)-(ii). In other words, the act provides for in rem jurisdiction against a domain name only in those circumstances where in personam jurisdiction is not available or where the individual defendant cannot be located after a diligent effort.

*Civil Procedure : Jurisdiction : Personal Jurisdiction & In Rem Actions : In Rem Actions*
*Cyberlaw : Trademarks : Internet Domain Names*

The Anticybersquatting Consumer Protection Act provides that a trademark owner may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the name is located if a district court finds that the owner is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under 15 U.S.C.S. § 1125(d)(1). 15 U.S.C.S. § 1125(d)(2)(A)(ii)(I). Although the statute does not explicitly address whether the alleged mark owner must disprove the existence of in personam jurisdiction over the defendant in any judicial district in the United States or only in the forum where the domain name registrar is located, courts have held that the alleged mark owner must show the absence of in personam jurisdiction in any judicial district in the United States. The statute provides an avenue for relief against foreign-resident cybersquatters.

*Civil Procedure : Early Pretrial Judgments : Default : Relief From Default*

In the context of a motion for relief from default, a district court's inquiry does not end with a finding of voidness. A court must next evaluate whether good cause exists for setting aside a default judgment. The factors a court must consider are (1) whether a default resulted from excusable neglect; (2) whether setting aside the entry of default or the default judgment will prejudice the adversary; and (3) whether a meritorious defense is presented.

*Civil Procedure : Early Pretrial Judgments : Default : Relief From Default*

Generally, with a motion to set aside a default judgment, a movant must demonstrate that the outcome of the lawsuit may be different than if the default judgment is allowed to stand. Therefore, in most cases, a district court will require a movant to demonstrate a meritorious defense to the action as a prerequisite to vacating the default judgment. However, when a judgment is void, no other defense to the action need be shown. If a defendant's jurisdictional challenge is meritorious, it will invalidate a default judgment, and no other reason to vacate the default will need to be shown.

*Civil Procedure : Early Pretrial Judgments : Default : Relief From Default*

2002 U.S. Dist. LEXIS 3348, *

To merit relief from default judgment, a party must show that its failure to file a timely answer or otherwise defend resulted from excusable neglect.

***Civil Procedure : Pleading & Practice : Service of Process***
***Civil Procedure : Early Pretrial Judgments : Default : Entry of Default & Default Judgment***
Where a defendant is never served, a defendant's duty to respond to the lawsuit is never triggered. Until a plaintiff serves a defendant, a defendant has no duty to answer a complaint and a plaintiff cannot obtain a default judgment.

***Civil Procedure : Early Pretrial Judgments : Default : Relief From Default***
If a plaintiff will suffer prejudice by reopening an action, a district court may deny a defendant's motion for relief from a default judgment. The prejudice must involve more than the mere possibility of prejudice from delay inherent in every case. Likewise, delay in the collection of a judgment by a plaintiff or requiring a plaintiff to litigate the merits of the claim is insufficient prejudice to allow a default judgment to stand. However, if a defaulting party can present evidence of prejudice that is substantial and cannot be relieved by imposing terms or conditions, a court may be persuaded to deny the motion.

***Civil Procedure : Early Pretrial Judgments : Default : Relief From Default***
***Governments : Legislation : Statutes of Limitations : Time Limitations***
While Fed. R. Civ. P. 60(b)(1), (2), and (3) motions must be brought within one year after the date of judgment, motions brought pursuant to Fed. R. Civ. P. 60(b)(4) (relief from judgment based on voidness) have no set time limit. The one-year limit applicable to some Fed. R. Civ. P. 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a reasonable time, which seems literally to apply to motions under Fed. R. Civ. P. 60(b)(4), cannot be enforced with regard to this class of motion.

***Civil Procedure : Sanctions : Baseless Filings***
See Fed. R. Civ. P. 11(b).

***Civil Procedure : Sanctions : Baseless Filings***
A violation of Fed. R. Civ. P. 11(c) may result in the imposition of sanctions on the attorney. By signing and filing a document with a district court, an attorney is implicitly certifying that he has complied with three affirmative duties: (1) that the attorney has conducted a reasonable inquiry into the facts that support the document; (2) that the attorney has conducted a reasonable inquiry into the law such that the document

embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and (3) that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation.

**COUNSEL:**
For ROBERT N GOLDSTEIN, plaintiff: Michael C O'Toole, Mark G Falkin, Attorneys at Law, Falkin & O'Toole, Dallas, TX USA.

For P A GORDON, WWW.CHEATERS.COM, defendants: Eugenia S Hansen, John A Dondrea, Attorneys at Law, Sidley Austin Brown & Wood, Dallas, TX USA.

For P A GORDON, WWW.CHEATERS.COM, defendants: William Chad Shear, Attorney at Law, US Court of Appeals for Federal Circuit, Washington, DC USA.

**JUDGES:**
JORGE A. SOLIS, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:**
JORGE A. SOLIS

**OPINION:**

### MEMORANDUM OPINION AND ORDER

Now before the Court are:

1. Defendant cheaters.com's Motion to Set Aside Default Judgment for Lack of *in rem* Jurisdiction and to Dismiss under Fed. R. Civ. P. 12(b)(2) and (5), filed April 4, 2001; n1 and

2. Defendants' Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure, filed June 19, 2001. n2
[*2]

> n1 Plaintiff Robert N. Goldstein filed his response brief on April 24, 2001. Defendant cheaters.com filed its reply brief on May 9, 2001.

> n2 Plaintiff Robert N. Goldstein filed his response brief on July 9, 2001. Defendants filed their reply brief on July 24, 2001.

### PROCEDURAL HISTORY

2002 U.S. Dist. LEXIS 3348, *

On or about January 2, 1998, Defendant Gordon registered the domain name "cheaters.com" with Network Solutions, Inc., an internet domain name registrar and database company. (See Pl.'s First Am. Compl. P 12.) On January 6, 2000, Plaintiff Robert N. Goldstein ("Plaintiff") filed this lawsuit against Defendant Philip Alexander Gordon ("Defendant Gordon") for engaging in unfair competition under the Lanham Act. (See generally Pl.'s Compl.) On January 6, 2000, the United States District Court for the Northern District of Texas issued a summons to Defendant Gordon at an address in Canada. (See Def.'s App. at 24.) The summons was never served on Defendant Gordon and the Return of Service was never received [*3] by the Court.

On March 31, 2000, Plaintiff filed his First Amended Complaint and added the domain name "www.cheaters.com" as a defendant to the action. (See generally Pl.'s First Am. Compl.) Plaintiff asserts in his First Amended Complaint that he had been unable, after an "exhaustive and diligent search," to locate Defendant Gordon. (See id. P 6.) Moreover, Plaintiff contends, the Court does not have personal jurisdiction over Defendant Gordon. (See id.) Therefore, Plaintiff urged the Court to proceed *in rem* against the domain name itself pursuant to 15 U.S.C. § 1125(d)(2)(A), which is the Anticybersquatting Consumer Protection Act ("ACPA") (See id. P 7.) Plaintiff alleged that Defendant Gordon had illegal ownership of and was illegally using the domain name "www.cheaters.com." (See Def.'s App. at 44.)

On April 4, 2000, the United States District Court for the Northern District of Texas issued a summons to Defendant cheaters.com c/o Network Solutions, Inc. in Herndon, Virginia. (See id. at 36.) The summons was never served on Defendant cheaters.com and the Return of Service was never received by the Court. As of May 19, 2000, neither [*4] Defendant Gordon nor Defendant cheaters.com had been served with process. (See id. at 44.)

On May 3, 2000, Plaintiff filed a document entitled "Consent Motion to Deposit Registrar Certificate into the Registry of the Court." (See id. at 42.) In the motion, Plaintiff represented that "the parties" were seeking to tender control of the domain name registration and use of www.cheaters.com into the Court Registry. (See id.) However, the only party who consented to the motion was Plaintiff - neither defendant had signed the pleading. (See id. at 42.) Interestingly, despite Plaintiff's contention that he had been unable to locate Defendant Gordon, Plaintiff attached a Registrar Certificate to the "Consent Motion" that listed Defendant Gordon's address as 133 Washington Boulevard # 355, Marina del Ray, California 90292. (See id. at 39.)

On May 19, 2000, Plaintiff filed a Motion for a Finding of No Personal Jurisdiction over Defendant Phillip [sic] Alexander Gordon. (See id. at 44-46.) In the motion, Plaintiff sought to have the Court declare, pursuant to § 1125(d)(2)(B), that service of process was proper as to Defendant cheaters.com because Plaintiff could not [*5] obtain personal jurisdiction over Defendant Gordon. (See id.) The Court entered an order granting the motion on May 30, 2000.

On June 28, 2000, Plaintiff sought entry of a default judgment against Defendant cheaters.com that would entitle Plaintiff to ownership of the domain name. (See Def.'s App. at 48-49, 51-52.) A default judgment against cheaters.com was entered that same day and consequently, Network Solutions, Inc. transferred ownership of the domain name "www.cheaters.com" to Plaintiff. (See Def.'s Mot. at 4; Def.'s App. at 50, 53) Plaintiff is now listed by Network Solutions, Inc. as the registrant of "www.cheaters.com." (See Def.'s Mot. at 4.)

Nine months later, Defendant cheaters.com filed this Motion to Set Aside Default Judgment and contends that the default judgment is void. Defendant Gordon, in his capacity as registrant of the domain name cheaters.com and the legal representative of Defendant cheaters.com at the time of the entry of the default judgment, contests the invocation of *in rem* jurisdiction over Defendant cheaters.com and seeks to have the default judgment set aside, and the action against him and cheaters.com dismissed for lack of personal [*6] and *in rem* jurisdiction.

**DISCUSSION**

**I.   MOTION   TO   SET   ASIDE   DEFAULT JUDGMENT.**

**A. Legal Standard.**

Default judgments are not favored by the law because courts encourage trials on the merits. See 10A Wright and Miller, Federal Practice and Procedure § § 2692-93 (1998). In fact, "default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." Lewis v. Lynn, 236 F.3d 766, 767 (5th Cir. 2001). In ruling on a motion to set aside default judgment, a court should resolve all doubts in favor of the party seeking relief from the judgment. See  Davis v. Parkhill-Goodloe Co., 302 F.2d 489, 495 (5th Cir. 1962); General Tel. Corp. v. General Tel. Answering Service, 277 F.2d 919, 921 (5th Cir. 1960). A motion to set aside a default judgment is addressed to the sound discretion of the district court. See  McGrady v. D'Andrea Elec., Inc., 434 F.2d 1000, 1001 (5th Cir. 1970).

\

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party or its representative from any judgment, including a default judgment, on the basis of (1) [*7] fraud, misrepresentation, or misconduct of the adverse party; (2) the judgment being void; or (3) any other reason justifying relief from the judgment. See Fed. R. Civ. P. 60(b). To prevail on a motion to set aside default judgment, a defendant must also show "good cause." See CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992); Meaux Services, Inc. v. Dao, 160 F.R.D. 563, 564 (E.D. Tex. 1995). Courts in the Fifth Circuit uniformly consider the following factors when determining whether good cause exists: whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. Id. These factors are not "talismanic," and the Court may consider others. Id. n3

n3 An additional factor that generally influences a court's exercise of discretion is its assessment of the parties' good faith or lack thereof. See 10A Wright & Miller, Federal Practice and Procedure § 2693. For instance, when a party appears unduly anxious to win by default, the court may be generous toward the party moving for relief. Id. "On the other hand, when the nondefaulting party endeavors to encourage the other party to respond, provides sufficient opportunity for the opponent to correct the default, or does not press too rapidly for the entry of the default and the subsequent judgment, a court typically will conclude that there is no reason to give the defaulting party relief." Id.

Plaintiff identified cheaters.com as a defendant in his Amended Complaint, dated March 31, 2000. On May 19, 2000 Plaintiff sought dismissal of Defendant Gordon, a necessary act for the in rem action against cheaters.com to stand. See 15 U.S.C. § 1125(d)(2)(A). On May 30, 2000, the Court granted Plaintiff's motion to dismiss Defendant Gordon; an act that the Court believed constituted service of process on Defendant cheaters.com pursuant to Plaintiff's representations and in accordance with § 1125. Defendant cheaters.com thus had 20 days from May 30, 2000 to answer the amended complaint in accordance with Federal Rule 12(a). On June 28, 2000, a mere eight days after the expiration of the answer deadline, Plaintiff sought a default judgment against Defendant cheaters.com. This immediate action could be interpreted as constituting bad faith in seeking the default judgment.

[*8]

B. Void Judgment.

Defendant contends the Court should set aside the default judgment because the judgment is void. (See Def.'s Mot. at 4-5.) Courts look to two factors to determine voidness: (1) whether the court lacks jurisdiction over the subject matter or the parties or (2) if the court acted in a manner inconsistent with due process. See Carter v. Fenner, 136 F.3d 1000, 1006 (5th Cir. 1998). Defendant contends that the default judgment should be rendered void and set aside because the Court lacked in rem jurisdiction over Defendant cheaters.com.

The ACPA provides two avenues for suing a defendant in a trademark action. A trademark owner may proceed "either in personam against an infringer, or in certain circumstances where this cannot be done, the owner may proceed in rem against the domain name; a mark owner may not proceed against both at the same time." Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com, 128 F. Supp. 2d 340, 344 (E.D. Va. 2001). A trademark owner may file an in rem cause of action only where the court finds that the owner of the mark (a) is not able to obtain in personam jurisdiction [*9] over a person who would have been a defendant in the action or (b) through due diligence was not able to locate the person who would have been a defendant in the action. 15 U.S.C. § 1125(d)(2)(A)(i)-(ii). In other words, the ACPA provides for in rem jurisdiction against a domain name only in those circumstances where in personam jurisdiction is not available or where the individual defendant cannot be located after a diligent effort.

The ACPA provides that a trademark owner "may file an in rem civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the name is located if" the court finds that the owner "is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph 1." 15 U.S.C. § 1125(d)(2)(A)(ii)(I). n4 Although the statute does not explicitly address whether the alleged mark owner must disprove the existence of in personam jurisdiction over the defendant in any judicial district in the United States or only in the forum where the [*10] domain name registrar is located, courts have held that the alleged mark owner must show the absence of in personam jurisdiction in any judicial district in the United States. See Alitalia-Linee, 128 F. Supp.2d at 347 n.14; Heathmount A.E. Corp. v. Technodome.Com., 106 F. Supp. 2d 860, 867 (E.D. Va. 2000). n5 Courts have so held because the statute was designed to provide an

2002 U.S. Dist. LEXIS 3348, *

avenue for relief against foreign-resident cybersquatters. See Heathmount, 106 F. Supp. 2d at 868 (for a discussion on the legislative history of the *in rem* provision of the ACPA).

> n4 Defendant's discussion about § 1125(d)(2)(A)(ii)(II) is irrelevant because Plaintiff chose to proceed *in rem* pursuant to § 1125(d)(2)(A)(ii)(I), not (II), of the statute. (See Def.'s Mot. at 6-7; Pl.'s Am. Compl. P 6.)

> n5 Contrary to Plaintiff's argument, the requirement that a mark owner establish that the registrant of the domain name is not subject to personal jurisdiction in any United States court is not a "change" in the law - it is merely an interpretation of the law. (See Pl.'s Resp. at 4.)

[*11]

In this case, Plaintiff has failed to demonstrate that Defendant Gordon was not subject to *in personam* jurisdiction in any judicial district in the United States. In fact, Defendant Gordon is admittedly subject to personal jurisdiction in the State of California. (See Def.'s App. at 12-13.) Moreover, David M. Graves, the Vice President of Network Solutions, Inc., declared under penalty of perjury in April 2000 that his company's records indicate that Defendant Gordon's address is 333 Washington Blvd. # 355, Marina del Rey, California 90292. (Id. at 39.)

Plaintiff would have been able to maintain an *in rem* action against cheaters.com *only if* Plaintiff could not obtain personal jurisdiction over Defendant Gordon. See 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Because Defendant Gordon is subject to personal jurisdiction in the United States in the State of California, it was improper for Plaintiff to proceed *in rem* against Defendant cheaters.com. Consequently, the Court could not assert jurisdiction over Defendant cheaters.com and the default judgment shall be rendered void.

**C. Good Cause Exists.**

The Court's inquiry does not end with [*12] a finding of voidness. The Court must next evaluate whether "good cause" exists for setting aside the default judgment. See CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 64 (5th Cir. 1992). The factors the Court must consider are (1) whether the default resulted from excusable neglect; (2) whether setting aside the entry of default or the default judgment would prejudice the adversary; and (3) whether a meritorious defense is presented. Id.

**1. Meritorious Defense.**

Generally, with a motion to set aside a default judgment, the movant must demonstrate that the outcome of the lawsuit may be different than if the default judgment is allowed to stand. See Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 403 (5th Cir.1981). Therefore, in most cases, the court will require the movant to demonstrate a meritorious defense to the action as a prerequisite to vacating the default judgment. See CJC Holdings, Inc, 979 F.2d at 64. However, when a judgment is void, no other defense to the action need be shown. See Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86, 99 L. Ed. 2d 75, 108 S. Ct. 896 (1988); St. Paul Surplus Lines Ins. Co. v. Davis, 983 F.2d 1057 (4th Cir. 1993) [*13] (Text in Westlaw No. 91-2213) (If a defendant's "jurisdictional challenge is meritorious, it would invalidate the default judgment, and no other reason to vacate the default would need to be shown"); Gray v. Permanent Mission of the Peoples Republic of the Congo to the United Nations, 443 F. Supp. 816, 821-22 (S.D.N.Y.); 10A Wright & Miller, Federal Practice and Procedure § 2697.

**2. Excusable Neglect.**

To merit relief from default judgment, a party must show that its failure to file a timely answer or otherwise defend resulted from excusable neglect. See CJC Holdings, Inc., 979 F.2d at 64. n6 Plaintiff contends that Defendant exhibited culpable conduct because, although Defendant did not receive actual notice of the lawsuit through proper service, Defendant did have constructive notice of the lawsuit through his receipt of e-mail communications from Plaintiff. (See Pl.'s Resp. at 8-9.) According to the evidence before the Court, Plaintiff's counsel sent an e-mail to Defendant Gordon on March 10, 2000 stating that Defendant Gordon had been sued in federal court in Dallas, Texas in connection with the domain name cheaters.com. (Pl.'s App. [*14] at 2.) However, the e-mail explicitly acknowledges that the complaint had not been served on Defendant. (Id.)

> n6 Before CJC Holdings, Fifth Circuit held that courts should inquire as to whether the default was "willful." CJC Holdings, 979 F.2d at 64. However, in CJC Holdings, the Fifth Circuit instructed that in all future cases, the district court should apply an "excusable neglect" standard. Id.

The summonses of the Original Complaint and the Amended Complaint were never served on Defendant Gordon and the Returns of Service for those complaints were never received by the Court. According to the evidence before the Court, Defendant Gordon's California address was always on file with Network

Solutions, Inc., and yet, by Plaintiff's own admission, neither Defendant Gordon nor cheaters.com had been served with process with respect to either lawsuit. (Def.'s App. at 44.) n7 Defendants were not required to scour the Court's records in order to locate and read a copy of the complaint [*15] filed against them. Because Defendant Gordon was never served, Defendant's duty to respond to the lawsuit was never triggered. See Rogers v. Hartford Life and Acc. Ins. Co., 167 F.3d 933, 937 (5th Cir. 1999) ("Until the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment.") Defendant's failure to respond to the lawsuit was excusable, and was not neglectful.

n7 Service of process was not effected on Defendant cheaters.com pursuant to § 1125(d)(2)(A) and (B) either. This action was not filed in the judicial district in which the domain name registrar (Network Solutions, Inc.) is located (Herndon, Virginia). Contrary to Plaintiff's argument, courts have consistently held that § 1125(d)(2)(C) does not provide an alternate basis for in rem jurisdiction. See Mattel, Inc. v. Barbie-Club.com, 2001 U.S. Dist. LEXIS 5262, No. 00 CIV 8705 DLC, 2001 WL 436207, at *2 (S.D.N.Y. 2001); FleetBoston Financial Corp. v. FleetBostonFinancial.com, 138 F. Supp.2d 121 (D. Mass. 2001); Cable News Network L.P., L.L.L.P. v. CNNews.com, 162 F. Supp.2d 484, 489 n.15 (E.D. Va. 2001). Moreover, Plaintiff's failure to effect service on Defendant cheaters.com serves as an additional basis for concluding that the default judgment is void.

[*16]

### 3. Prejudice Suffered.

If a plaintiff will suffer prejudice by reopening an action, a court may deny the defendant's motion for relief from a default judgment. See Owens-Illinois, Inc. v. L & N Ltd., 191 F.R.D. 522, 526 (E.D. Tex. 2000) (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395, 123 L. Ed. 2d 74, 113 S. Ct. 1489 (1993)). The prejudice must involve more than the mere possibility of prejudice from delay inherent in every case. See **Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima, 776 F.2d 1277, 1280 (5th Cir. 1985)**. Likewise, delay in the collection of a judgment by a plaintiff or requiring a plaintiff to litigate the merits of the claim is insufficient prejudice to allow a default judgment to stand. See United States v. One Parcel of Real Property, 763 F.2d

181, 183 (5th Cir. 1985). However, "if the defaulting party can present evidence of prejudice that is substantial and cannot be relieved by imposing terms or conditions, the court may be persuaded to deny the motion ..." 10A Wright & Miller, Federal Practice and Procedure § 2699.

Plaintiff contends [*17] that he will suffer prejudice because he has been using the internet site "cheaters.com" to market his television show for quite some time. (Pl.'s Resp. at 5-6.) The Court is not persuaded that this serves as a sufficient basis for denying the motion to set aside the default judgment. In fact, the Court has reason to believe that Plaintiff was not acting in good faith in seeking the default judgment in the first instance. There is no evidence that Plaintiff sent Defendants a copy of the Complaint at the address listed with Network Solutions, Inc. or that Plaintiff made any real attempt via e-mail or U.S. mail to encourage Defendants to respond to the lawsuit. Furthermore, Plaintiff pressed rapidly for the entry of the default and the subsequent judgment shortly after the answer date had expired. (See supra note 3.)

The Court is also disinclined to conclude that Plaintiff will suffer prejudice if the default judgment is set aside because Defendant has presented a persuasive argument that Plaintiff's conduct was culpable with respect to the entry of default and the default judgment. The Court finds it difficult to believe that Plaintiff did not know that Defendant resided in California [*18] and could not locate or serve Defendant at that location - especially when the evidence before the Court indicates that the documents on file with Network Solutions, Inc. list Defendant Gordon's California address as his address. (Def.'s App. at 12-13, 39.) Allowing the litigation to proceed on its merits would not substantially prejudice Plaintiff.

### 4. Timing of the Motion for Relief.

Plaintiff contends that Defendant's motion to set aside the default judgment should be denied because it was not filed in a timely manner according to Rule 60(b) of the Federal Rules of Civil Procedure. (Pl.'s Resp. at 6-7.) While Rule 60(b)(1), (2), and (3) motions must be brought within one year after the date of judgment, motions brought pursuant to Rule 60(b)(4) (relief from judgment based on voidness) have no set time limit. See Carter, 136 F.3d at 1006 ("there is no time limit on an attack on a judgment as void."). In Carter v. Fenner, the Fifth Circuit Court of Appeals held that "the one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply [*19] to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion." Id. (citing

2002 U.S. Dist. LEXIS 3348, *

New York Life Ins. Co. v. Brown, 84 F.3d 137, 142-43 (5th Cir.1996)).

Therefore, the Court hereby GRANTS Defendant's Motion to Set Aside Default Judgment and the default judgment against Defendants is hereby VACATED. Because the Court lacks jurisdiction over Defendant www.cheaters.com, the Court also GRANTS Defendant's Rule 12(b)(2) Motion to Dismiss with respect to Defendant cheaters.com. Moreover, because Plaintiff has argued, and the Court has already held, that the Court does not have personal jurisdiction over Defendant Gordon, this action is no longer pending against Defendant Gordon. (See Mot., May 19, 2000; Order, May 30, 2000.) Therefore, the Court GRANTS Defendant's Motion to Dismiss with respect to Defendant Gordon.

## II. MOTION FOR SANCTIONS

In their Motion for Sanctions, Defendants refer to three examples of allegedly sanctionable conduct committed by Plaintiff. First, Defendants contend that Plaintiff filed a fraudulent "Consent Motion." Second, Defendants argue that Plaintiff failed to serve Defendants with process and concealed his [*20] knowledge concerning Defendant Gordon's whereabouts and the true location of Defendant Gordon in order to convince the Court that *in rem* jurisdiction was proper. Third, Defendants allege that Plaintiff misrepresented the law. (Mot. for Sanctions at 1-2.)

### A. Legal Standard.

Rule 11 of the Federal Rules of Civil Procedure provides:

by presenting to the court [in] a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable

opportunity for further investigation or [*21] discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Civ. P. 11(b).

A violation of this section may result in the imposition of sanctions on the attorney. Fed. R. Civ. P. 11(c). By signing and filing a document with the Court, the attorney is implicitly certifying that he has complied with three affirmative duties: (1) that the attorney has conducted a reasonable inquiry into the facts that support the document; (2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and (3) that the modification is not interposed for purposes of delay, harassment, or increasing the costs of litigation. See Childs v. State Farm Mut. Auto. Ins. Co., 29 F.3d 1018, 1023-24 (5th Cir. 1994).

### A. Consent Motion.

In their briefing, Defendants contend that because Plaintiff could not obtain personal jurisdiction over Defendant Gordon, Plaintiff invented a false basis for *in rem* jurisdiction [*22] over Defendant cheaters.com and filed misleading documents with the Court to obtain that jurisdiction. (Id. at 2-4.) Specifically, Plaintiff initially sought to proceed *in rem* against Defendant cheaters.com under § 1125(d)(2)(A), but only when Plaintiff realized jurisdiction was not proper under that section, Plaintiff sought to invoke jurisdiction under § 1125(d)(2)(C) (the "situs" provision).

Under Plaintiff's interpretation of this "situs" provision of the statute, the only way Plaintiff would have been able to maintain this action in this judicial district is if he deposited documents with the Court that were "sufficient to establish control and authority regarding the disposition of the registration and use of the domain name." See 15 U.S.C. § 1125(d)(2)(C). To accomplish this, Plaintiff filed a motion that he mischaracterized as a "Consent Motion" and that falsely represented that "the parties" sought to give the Registry of the Court control over the domain name's registration and use. (Defs.' App. at 31.) By filing this "Consent Motion," Plaintiff was able to argue (albeit, unsuccessfully) that he had satisfied the *in rem* jurisdictional [*23] requirements of § 1125(d)(2)(C). (See Pl.'s Resp. at 4-5.) n8 The Court signed Plaintiff's accompanying proposed order that described the motion

as a "consent motion by the parties to the action." (Id. at 33.)

n8 Plaintiff argued that the documents necessary to establish control over the domain name were located in the Northern District of Texas and that *in rem* jurisdiction was proper under the "situs" provision of § 1125(d)(2)(C). (See Pl.'s Resp. to Mot. to Set Aside Default at 4-5.)

However, as Defendants note, "Gordon **never** saw the motion, **never** was consulted about the motion, and certainly **never** consented to it." (Defs.' Mot. at 3 (emphasis in original).) Plaintiff purposefully misled the Court into believing that Defendants consented to the motion in his attempt to secure *in rem* jurisdiction over Defendant cheaters.com.

**B. No Service on Defendant Gordon.**

In their briefing, Defendants focus in large part on the fact that Defendant Gordon was never [*24] served in this action. (Mot. for Sanctions at 12-13.) By Plaintiff's own admission, the summonses of the Original Complaint and the Amended Complaint were never served on Defendant Gordon and the Returns of Service for those complaints were never received by the Court. (Def.'s App. to Mot. to Set Aside Default J'ment at 44.) n9

n9 Based on the evidence before the Court, Plaintiff's contention that he was unable to locate and serve Gordon is incredible. Plaintiff maintained that he conducted an exhaustive and diligent search, yet could not locate Defendant Gordon anywhere in the United States. (Pl.'s First Am. Compl. P 6; Defs.' App. at 38.) After reviewing the evidence before the Court, the Court concludes that Plaintiff's statement is disingenuous. First, Defendant Gordon's California contact information was on record with Network Solutions, Inc. - a company with which Plaintiff was undoubtedly familiar - from the time this lawsuit was filed until the present (Def.'s App. at 1-2, 97.) Moreover, on May 3, 2000, Plaintiff himself filed a document with the Court that contained Defendant Gordon's California address. (See id. at 34.) Additionally, Plaintiff had corresponded with Defendant Gordon via e-mail on more than one occasion after the lawsuit was filed, and never sought to get Defendant Gordon's mailing address from

him during these exchanges. (See id. at 3.) The Court believes that Plaintiff did not make a sincere attempt to locate Defendant Gordon.

[*25]

In response, Plaintiff contends that he believed he was not required to locate and serve Defendant Gordon according to § 1125. Plaintiff contends that he reasonably believed § 1125 permitted him to proceed *in rem* against the domain name since he could not obtain *in personam* jurisdiction over Defendant Gordon in the State of Texas. See 15 U.S.C. § 1125(d)(2)(A)(ii)(I). Plaintiff correctly states that at the time this action was filed, the issue of whether the alleged mark owner must disprove the existence of *in personam* jurisdiction over a defendant in *any* judicial district in the United States or only in the forum where the domain name registrar is located, was unsettled. Plaintiff argued in his response to the motion to set aside the default judgment that he must disprove personal jurisdiction only in the jurisdiction in which the documents sufficient to establish control over the domain name were located (the "situs" provision of § 1125(d)(2)(C)) - in this case, the Northern District of Texas. Plaintiff then argued that the "situs" provision of § 1125(d)(2)(C) provided an alternate basis for *in rem* jurisdiction, and that *in rem* [*26] jurisdiction in this case was predicated on that provision.

Plaintiff's interpretation of the statute is flawed in two key respects: (1) Plaintiff was required to disprove jurisdiction in any judicial district in the United States, not just in Texas; and (2) the situs provision does not provide an alternative means for asserting *in rem* jurisdiction. However, although Plaintiff's interpretation of the law was "a stretch," it does not necessarily follow that Plaintiff misrepresented the law to the Court. At the time the briefing was filed, and even today, the law in this area is not well-settled, and these issues had not, and still have not, been addressed or resolved by the Fifth Circuit.

In sum, the Court concludes that Plaintiff's tortured reading of the law and the blatant misrepresentations contained in his "Consent Motion" allowed Plaintiff to manipulate the judicial system to give him control over the domain name without having to fully litigate the merits of this case. By filing this fraudulent motion and convincing the Court that the Parties had consented to relinquish control and authority of the domain name to the Court, Plaintiff was able to obtain a default judgment [*27] and possession and use of the domain name without serving or notifying either defendant. This conduct is sanctionable. Therefore, Defendants' Motion for Sanctions is hereby GRANTED and Plaintiff is hereby ordered to reimburse all attorneys' fees and costs

incurred by Defendants in connection with filing the motion to set aside the default judgment and the motion for sanctions. Defendants are directed to file an affidavit with the Court setting forth the time reasonably spent in connection with the motion to set aside the default judgment and the motion for sanctions, the rate charged, and the total amount of fees and expenses sought. If Plaintiff chooses to contest the fees and expenses sought, Plaintiff should file its responsive documents within twenty (20) days after the filing of Defendants' documents. Defendants will have fifteen (15) days to reply.

SO ORDERED, this 27th day of February, 2002.

JORGE A. SOLIS

UNITED STATES DISTRICT JUDGE

**FINAL JUDGMENT**

Pursuant to the Court's Memorandum Opinion and Order filed on February 27, 2002, the Court issues judgment as follows:

Plaintiff's claims against defendants Philip Alexander Gordon and WWW.Cheaters.com are [*28] DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

Signed this 27th day of February, 2002 at Dallas, Texas.

JORGE A. SOLIS

UNITED STATES DISTRICT JUDGE

LEXSEE 2001 u.s. dist. lexis 20108

FRANK A. ST. CLAIRE, Plaintiff, VS. ENSURELINK, a Nevada corporation, ET AL., Defendants.

CIVIL ACTION NO. 3:01-CV-1548-G

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

2001 U.S. Dist. LEXIS 20108

December 4, 2001, Decided

December 5, 2001, Filed

## DISPOSITION:

[*1] Defendant EnsureLink's motion to set aside the default entered against it and for relief from the judgment rendered as a result of its default GRANTED. Final judgment entered in this case SET ASIDE and VACATED.

## COUNSEL:

For FRANK A ST CLAIRE, plaintiff: Linda F Jenkins, Attorney at Law, Law Office of Linda F Jenkins, Dallas, TX USA.

For ENSURELINK, defendant: Christopher H Rentzel, Attorney at Law, Bracewell & Patterson, Dallas, TX USA.

## JUDGES:

A. JOE FISH, United States District Judge.

## OPINIONBY:

A. JOE FISH

## OPINION:

### MEMORANDUM ORDER

Before the court is the motion of the defendant EnsureLink Corporation ("EnsureLink") to set aside a default entered against it and for relief from the judgment rendered as a result of the default. For the following reasons, EnsureLink's motion is granted.

I. BACKGROUND

Plaintiff Frank A. St. Claire ("St. Claire") served as Chief Executive Officer ("CEO") of EnsureLink from approximately May 1, 2001 until his employment was terminated on August 8, 2001. Motion to Vacate Default Judgment and Brief in Support ("Motion to Vacate") P 1; Plaintiff's First Amended Original Complaint and Jury Demand ("Complaint") P 12. According to St. Claire, [*2] his employment agreement with EnsureLink guaranteed him an annual base salary of $ 90,000, as well as deferred salary, stock options, medical and dental benefits, and severance pay in the event that EnsureLink fired him without cause. Complaint P 12. In his complaint, St. Claire alleged that he was wrongfully terminated and that EnsureLink refused to pay him, pursuant to the employment agreement, the balance of his base salary and severance pay. Complaint P 15. St. Claire filed this suit on August 10, 2001 and amended his complaint a month later, asserting causes of action for breach of contract, declaratory judgment, indemnification, and attorneys' fees. See generally Complaint. The Texas Secretary of State's Office forwarded service of process by certified mail to EnsureLink on August 29, 2001. Plaintiff's Response to EnsureLink's Motion to Vacate Default Judgment ("Response") P 2. On September 4, 2001, the Secretary of State's Office received the return receipt of the service of process bearing the signature of EnsureLink's agent. Id. EnsureLink failed to answer St. Claire's complaint. See generally Brief in Support of Plaintiff's Request for Entry of Default by Clerk [*3] ("Motion for Default") at 1. On September 19, 2001, the clerk of court entered default against EnsureLink, and this court thereupon rendered judgment, awarding St. Claire $ 213,197.02. Judgment by Default, filed on September 20, 2001, at 1-

2. EnsureLink filed this motion to vacate the default judgment on September 28, 2001.

## II. ANALYSIS

The decision to set aside an entry of default under Federal Rule of Civil Procedure 55(c) n1 or to grant relief from a default judgment under Federal Rule of Civil Procedure 60(b) n2 is within the discretion of the district court. See *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 (5th Cir. 1992). Under either rule, the court considers the same factors: (1) whether the default resulted from excusable neglect; n3 (2) whether setting aside the entry of default or the default judgment would prejudice the adversary; and (3) whether a meritorious defense is presented. n4 See *id.* at 64. "The ultimate inquiry remains whether the defendant shows 'good cause' to set aside the default." *Id.*

n1 "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." FED. R. CIV. P. 55(c). [*4]

n2 "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect ...." FED. R. CIV. P. 60(b).

n3 Before *CJC Holdings*, Fifth Circuit law provided that the court should inquire as to whether the default was "willful." *CJC Holdings*, 979 F.2d at 64. However, in *CJC Holdings* the Fifth Circuit recommended that in all future cases the district court should apply an "excusable neglect" standard. *Id.*

n4 Courts sometimes consider other factors such as: (1) whether the public interest was implicated; (2) whether there was a significant financial loss to the defendant; and (3) whether the defendant acted expeditiously to correct the default. See *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) (citations omitted).

### A. Excusable Neglect

EnsureLink asserts that its conduct was not so culpable as to disqualify it from relief under Rule 60(b). Motion to Vacate P 15. In support of this claim, EnsureLink [*5] contends that it did not become aware of St.Claire's suit until late August and that it was in negotiations with St. Claire to settle the suit up to the moment that St. Claire obtained a default judgment. *Id.*

PP 4-7. In response, St. Claire argues "that there is abundant evidence that EnsureLink had actual knowledge of the lawsuit but chose to ignore it and not accept the responsibilities created thereby." n5 Response P 2. EnsureLink does not address whether it has any procedures in place to assure that all suits against it are timely answered and defended. In fact, EnsureLink concedes that it had knowledge of St. Claire's suit prior to entry of the default judgment. Motion to Vacate P 4. Nonetheless, in support of its claim that its failure to answer was not intentional, EnsureLink asserts that it took steps to correct its default by filing a motion to set aside the default within four days after judgment was entered. Motion to Vacate P 8. While EnsureLink has yet to answer St. Claire's amended complaint, the court finds that, on balance, EnsureLink's prompt response to the entry of default helped to avoid further delay in this action. See *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) [*6] (holding that, in deciding a motion to set aside a default, a court may consider whether the defendant acted expeditiously to correct its default).

n5 According to St. Claire, this evidence includes an August 27, 2001 letter from St. Claire's counsel to EnsureLink that referenced the suit and included a copy of the Certificate of Interested Parties; the return certified mail receipt of service of process, signed by EnsureLink's agent; and a courtesy copy of St. Claire's original complaint forwarded on August 21, 2001 to counsel for EnsureLink by St. Claire's attorney. Response PP 1-3 and attached Exhibits 1-2.

### B. Prejudice to St. Claire

Nowhere in his response does St.Claire contend that he will be prejudiced if the court grants EnsureLink's motion to vacate the default judgment. By contrast, EnsureLink argues that St. Claire would not be prejudiced by setting aside the default judgment because not much time has elapsed since it was entered; there has been no material change in circumstances; and St. Claire [*7] would be no worse off than he was before the default judgment was entered. Motion to Vacate P 12.

Arguably, granting EnsureLink's motion to vacate the default judgment would cause St. Claire to suffer prejudice by delaying him from collecting any judgment to which he may be entitled. Delaying collection of a judgment by a plaintiff, however, is insufficient prejudice to allow a default to stand. See *United States v. One Parcel of Real Property*, 763 F.2d 181, 183 (5th Cir. 1985). Moreover, "the mere possibility of prejudice from delay, which is inherent in every case, is insufficient to

require denial of a 60(b)(1) motion." *Hibernia National Bank v. Administracion Central Sociedad Anonima*, 776 F.2d 1277, 1280 (5th Cir. 1985).

Finally, as discussed below, EnsureLink has alleged a meritorious defense. If the court were to grant EnsureLink's motion to vacate the default judgment, St. Claire would be required to litigate his case on its merits. Requiring a plaintiff to litigate the merits of his claims is insufficient prejudice to require the default judgment to stand. See *One Parcel of Real Property*, 763 F.2d at 183. Therefore, any prejudice [*8] St. Claire will suffer is not sufficient to justify denying EnsureLink's motion to set aside the default judgment.

C. EnsureLink's Meritorious Defense

EnsureLink asserts that it has presented a meritorious defense to St. Claire's claims. *See* Motion to Vacate PP 13-14. Specifically, EnsureLink contends that it had a legitimate reason for terminating St. Claire' employment: "that [St. Claire] did not perform his responsibilities under the Employment Agreement, and that he was terminated for Cause." *Id.* P 14. As further evidence in support of this defense, EnsureLink directs the court's attention to its Answer and the appendix to the motion to vacate. *Id.* n6 Based on the parties' submissions, the court concludes that if the default judgment is set aside, there is some possibility that EnsureLink could prevail on the merits. *See* Declaration of Aaron Jarson, located in Motion to Vacate Appendix, at 00003, P 4 (detailing reasons for St. Claire's termination). *Cf. Federal Savings and Loan Insurance Corporation v. Kroenke*, 858 F.2d 1067, 1070-71 (5th Cir. 1988) (finding defendant's potential defenses to be meritless and denying defendant's motion for [*9] relief from default). Given that EnsureLink has presented a colorable defense to St. Claire's claims, it should be allowed to defend itself on the merits. See *Dierschke*, 975 F.2d at 183 (noting that "courts 'universally favor trial on the merits'"); see also *Hibernia National Bank*, 776 F.2d at 1279 (FED. R. CIV. P. 60(b)(1) is to be liberally construed so that doubtful cases may be resolved upon the merits).

n6 Based on the court's review of the docket sheet, and as noted previously, EnsureLink has yet to file an answer to St. Claire's complaint. *See generally* Docket Sheet. As a result, the court is unsure why EnsureLink directed the court's attention to its non-existent answer. *See* Motion to Vacate P 14 ("As the Court *can see* from EnsureLink's Answer and the appendix to this motion ....") (emphasis added). Notwithstanding this conundrum, in light of the other documents referenced in EnsureLink's appendix to the

motion to vacate, *see* Declaration of Aaron Jarson, located in Appendix in Support of Motion to Vacate Default Judgment and Brief in Support ("Motion to Vacate Appendix"), at 00003, P 4, the court finds EnsureLink has raised a potentially viable defense to St. Claire's claims.

[*10]

III. CONCLUSION

EnsureLink's failure to answer St. Claire's complaint was the result of excusable neglect. EnsureLink has presented a meritorious defense to St. Claire's claims, and St. Claire would not be significantly prejudiced if the default judgment rendered against EnsureLink were set aside. Therefore, EnsureLink's motion to set aside the default entered against it and for relief from the judgment rendered as a result of its default is **GRANTED**.

The default entered against EnsureLink by the clerk on September 19, 2001 is hereby **VACATED**. The final judgment entered in this case on September 20, 2001 is **SET ASIDE** and **VACATED**. This civil action is hereby **REINSTATED**. EnsureLink shall file its responsive pleadings to the Amended Complaint within twenty days of the date of this memorandum order.

Furthermore, EnsureLink shall pay the reasonable and necessary attorneys' fees St. Claire incurred in seeking and taking the default judgment, and in seeking to collect that judgment. n7

n7 While the court grants EnsureLink's motion to vacate the default judgment, it also finds, given EnsureLink's admission that it was aware of St. Claire's suit, that EnsureLink should be required to pay any reasonable and necessary attorneys' fees incurred by St. Claire's counsel in seeking and taking the default judgment in this case. See *McGarrah v. KMart Corporation*, 1998 U.S. Dist. LEXIS 17118, No. 3:97-CV-2386-G, 1998 WL 760275, at *3 (N.D. Tex. Oct. 22, 1998) (Fish, J.) (ordering the payment of reasonable and necessary attorneys' fees plaintiff incurred in seeking and taking default judgment); *Forte v. East Harlem Block Schools, Inc.*, 1993 U.S. Dist. LEXIS 88, NO. CIV. 6942 (MBM), 1993 WL 7577, at *4 ("Although the prejudice to plaintiff here does not require denial of defendant's motion, plaintiff is entitled to recover any costs and fees he incurred in obtaining the default judgment and in opposing this motion. A court in the exercise of its discretion may impose conditions on granting relief from a default.") (internal citations omitted). Counsel are directed

2001 U.S. Dist. LEXIS 20108, *

to confer for the purpose of reaching agreement, if possible, on the amount of attorneys' fees St. Claire incurred in seeking default. If agreement cannot be reached, the court will refer that issue to the magistrate judge assigned to this case for a determination of the amount.

[*11]

**SO ORDERED**.

December 4, 2001.

A. JOE FISH

United States District Judge